LEWIS KIDD, APPELLEE, v. WINCHELL'S DONUT HOUSE AND
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
APPELLANTS.
465 N.W.2d 442

Filed February 1, 1991.    No. 90-083.

Joe P. Cashen and Thomas D. Wulff, of Kennedy, Holland, DeLacy & Svoboda, for appellants.

James E. Harris, of Harris, Feldman, Stumpf Law Offices, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Winchell's Donut House (Winchell's) and National Union Fire Insurance Company of Pittsburgh, defendants herein,

appeal from an award on rehearing by the Nebraska Workers' Compensation Court in favor of plaintiff-appellee, Lewis Kidd. One member of the panel dissented in part. We affirm as modified.

In this court, defendants assign the following errors in the actions of the Workers' Compensation Court, contending that the court erred (1) in finding that plaintiff sustained an injury due to a work-related accident, (2) in ordering defendants to reimburse the Nebraska Department of Social Services in an unspecified amount, (3) in finding that plaintiff was temporarily totally disabled during the time in question, and (4) in finding that plaintiff's wife was entitled to benefits for her home nursing care services.

The record, viewed in the light most favorable to plaintiff-appellee, the successful party, as required by *Elwood v. Panhandle Concrete Co.*, 236 Neb. 751, 463 N.W.2d 622 (1990), shows that plaintiff, born May 22, 1957, has suffered from diabetes since 1974 and has had diabetic retinopathy since at least January 1988. From the time plaintiff quit college after his junior year until January 1988, he held several jobs and had no diabetes-related vision problems at any of them. In January 1988, plaintiff began to experience problems related to his diabetes, but had no vision problems. At that time he was diagnosed as having background diabetic retinopathy, or hemorrhaging from normal blood vessels in the eye, as opposed to proliferative diabetic retinopathy, which is marked by the "growth of new blood vessels [which] would lead to marked hemorrhaging in the eye, such as a vitreous hemorrhage."

Plaintiff was first employed by Winchell's in July 1983 in Lubbock, Texas. He later moved to Omaha, Nebraska, in May 1987, where he was employed by Winchell's in various supervisory capacities up to the time of the accident.

On June 1, 1988, at 4 a.m., plaintiff was making doughnuts at a Winchell's store in Omaha, when he turned suddenly and struck the bony portion of the orbital rim above his right eye on a fry screen. Neither the right eyeball itself nor his left eye was struck. The incident did not "bother" plaintiff. He finished his shift, went home, and went to bed.

Upon waking, plaintiff "saw a big red splotch in about the

middle of [his] field of vision." His sight was impaired. He was examined by his personal physician, Dr. Marc Rendell, that afternoon. Rendell referred plaintiff to Dr. Ira Priluck. On June 2, 1988, Priluck examined plaintiff and determined that plaintiff's diabetic retinopathy was proliferative at that time and scheduled him for laser treatments for the right eye the following week. Later that day, plaintiff "started to see some blood in [his] left eye," similar to the problem he had experienced the previous day in his right eye. Plaintiff contacted Priluck and on June 3, 1988, went to see him for a "laser treatment on one of [his] eyes."

Plaintiff underwent a series of laser treatments on both eyes. Plaintiff testified that his vision had improved enough for him to go back to work for Winchell's from the end of July 1988 through the middle of August 1988. At that time he had a vitrectomy. From mid-August 1988 through March 1989, his vision "varied considerably." Apparently, plaintiff was not employed again until he took a telemarketing job in late May 1989. He held this job for approximately 2 weeks, at which time he took a leave of absence to have a second vitrectomy. After this surgery, he continued to have difficulty with his vision and could see only 4 to 5 inches in front of his face at the time of the rehearing. He was legally blind in both eyes at this time.

The scope of our review of a workers' compensation case is settled. A decision by the Workers' Compensation Court after rehearing has the same force and effect as a jury verdict, and findings of fact will not be set aside unless, after reviewing the record in the light most favorable to the successful party, we determine that those findings are clearly erroneous. *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990).

In defendants' first assignment of error, they allege that in light of plaintiff's preexisting condition and the subjective nature of his injury, the Workers' Compensation Court erred in finding that plaintiff had a work-related accident which caused hemorrhages in both of plaintiff's eyes. Defendants contend that plaintiff failed to meet the "enhanced burden of proof" required under these circumstances. In *Heiliger, supra* at 468, 461 N.W.2d at 572, we expressly "disapprove[d] of language in

this court's previous decisions . . . [citations omitted] which has imposed an enhanced degree of proof by an employee prosecuting a claim under the Nebraska Workers' Compensation Act." We further set out that under Neb. Rev. Stat. § 48-151(2) (Reissues 1968 & 1988), a "claimant's burden of proof and the preponderance of evidence standard have remained unchanged in the Workers' Compensation Act." *Heiliger, supra* at 467, 461 N.W.2d at 571. Thus, the evidence necessary to meet the burden of proof may vary depending on the facts of the case, but the burden remains the same. As we stated in *Heiliger, supra* at 468, 461 N.W.2d at 572:

> Although a claimant with a preexisting disability or condition may face various obstacles . . . and must satisfy the statutory requirements for an award under the Nebraska Workers' Compensation Act, an enhanced degree of proof, establishing a cause-and-effect relationship between a work-related injury and consequent disability, is not among a claimant's burdens for obtaining an award under the Nebraska Workers' Compensation Act.

This court held in *Spangler v. State*, 233 Neb. 790, 448 N.W.2d 145 (1989), that when a work-related injury combines with a preexisting condition to create a disability, recovery may be had even if in the absence of the preexisting condition no disability would have resulted. Thus, to receive an award, plaintiff in the instant case was required to prove by a preponderance of the evidence that his work-related accident combined with his preexisting condition to cause a compensable disability. Ordinarily, the trier of fact determines causation. *Spangler, supra*; *Binkerd v. Central Transportation Co.*, 236 Neb. 350, 461 N.W.2d 87 (1990).

The record in this case shows conflicting medical testimony as to causation. Dr. Priluck testified that background diabetic retinopathy is not necessarily the precursor of proliferative diabetic retinopathy and that the trauma to plaintiff's right orbital rim was the proximate cause of the hemorrhaging in both of plaintiff's eyes. Dr. D. Francis Arkfeld examined plaintiff on September 15, 1988, at plaintiff's request, and concluded "based on reasonable medical probability that

Lewis's problems with his vision are not related to the alleged injury."

When the testimony of expert witnesses conflicts, the trier of fact must weigh the evidence and resolve the contradiction. *Heiliger, supra.* Even if there is a contradiction in testimony from the same expert witness, " '[a] good faith conflict due to self-contradiction of an expert's opinions presents a question to be resolved by the trier of fact.' " *Vredeveld v. Gelco Express*, 222 Neb. 363, 369, 383 N.W.2d 780, 783 (1986). In the instant case, there is evidence in the record to support the Workers' Compensation Court's finding on causation, and we cannot say that it was clear error for that court to accept one expert's testimony over another's. Defendants' first assignment of error is without merit.

In defendants' second assignment of error, they contend that "[t]he court erred in ordering reimbursement to the Nebraska Department of Social Services in the absence of any evidence relating thereto. The court further erred in not making a final determination with respect to specific charges, and determining whether [they were] properly chargeable and whether the same were reasonable." Defendants are correct in this contention, and while the compensation court's order in this regard may not be reversed and dismissed, the cause must be remanded for further proceedings on this part of the order.

The record before us on this issue shows the following: Plaintiff filed his petition in the Workers' Compensation Court on October 25, 1988. This petition alleged that plaintiff had suffered a compensable injury on June 1, 1988. The original award indicates the defendants filed an answer, but that answer is not in the transcript, and we do not know the contents of the answer or the date it was filed.

On December 14, 1988, the Nebraska Department of Social Services (DSS) filed a "Notice Of Right to Subrogation" in plaintiff's case before the compensation court. This notice began, "COMES NOW the Nebraska Department of Social Services, subrogee to Lewis W. Kidd, and informs the court as follows: 1. That on the 31st day of May, 1988 [applicant not stated] applied for Medical Assistance benefits for Lewis W. Kidd . . . ." The notice further stated that by December 5, 1988,

DSS had provided $9,510.82 of "Medical Assistance benefits to Lewis W. Kidd, as listed in the above-captioned case," and that "pursuant to Nebraska Revised Statutes, Section 68-716," an application for such benefits "shall give a right of subrogation to [DSS]." The notice also stated that DSS had received additional bills of $10,693.73, which bills remained unpaid "pending the decision of the Court." The notice did not ask for any relief. A certificate of service showed that a copy of the notice was served on each of the defendants, defendants' claims adjustor (but not defendants' attorney), plaintiff, plaintiff's attorney, and the clerk of the compensation court.

Neb. Rev. Stat. § 68-716 (Cum. Supp. 1988) provided:

An application for medical assistance benefits shall give a right of subrogation to the Department of Social Services. Subject to sections 68-1038 to 68-1046, subrogation shall include every claim or right which the applicant may have against a third party when such right or claim involves money for medical care. The third party shall be liable to make payments directly to the Department of Social Services as soon as he or she is notified in writing of the valid claim for subrogation under this section.

A one-judge award was entered on March 1, 1989. This award ordered defendants to pay the sum of $9,510.82 to DSS "for medical services rendered to and on behalf of the plaintiff through December 5, 1988 under its right of subrogation pursuant to Nebraska Revised Statute 68-716" and further ordered defendants to "continue to reimburse said department for any further medical services paid on behalf of the plaintiff since that date that are fair and reasonable and related to the accident of June 1, 1988."

Defendant timely filed an "Application For Rehearing" from this award. On March 20, 1989, DSS filed another "Notice Of Right to Subrogation" with the compensation court. This notice was identical with the earlier DSS filing except the 1989 notice stated that DSS had provided $9,918.60 of benefits to plaintiff as of March 14, 1989, and that $11,260.98 of other medical bills had been received by DSS but not paid and were "forwarded directly to the Winchell [sic]

Donut House and Workers' Compensation Court for consideration and payment." In the award on rehearing, so far as it concerns this issue, the court ordered that "[t]he defendant reimburse [DSS] those charges incurred in connection with the compensable accident and paid by the welfare system."

This casual approach by the parties, DSS, and the compensation court to this issue of reimbursement of this not insignificant sum of approximately $10,000 results in a great deal of confusion. DSS has claimed it has a right of subrogation based on an application for medical benefits, filed by someone not identified, 1 day before an allegedly compensable accident. The amount claimed by DSS as subrogee has increased slightly as the case has proceeded. The compensation court has, in effect, ordered defendants to pay medical bills "incurred in connection with the compensable accident," without informing defendants or DSS what bills were so incurred and what bills are "reasonable." We are mindful that "when an employee presents evidence of medical expenses resulting from a work-related injury, the employee has presented prima facie proof of fairness and reasonableness for the expenses . . . ." *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 546, 451 N.W.2d 910, 916 (1990). The problem in the instant case is that DSS, in its notices of right to subrogation, has asked for lump sums, and it is unclear whether the total amounts listed in the notices reflect payments made by DSS for medical expenses which were "expenses resulting from a work-related injury." Each of the notices states that on May 31, 1988, the day before the accident occurred, someone applied for medical assistance benefits for the plaintiff. If correct, this would indicate that plaintiff incurred prior medical expenses unrelated to the accident. We note that the Workers' Compensation Court, on rehearing, did consider the reasonableness of other medical expenses in evidence before it because the court sharply reduced Priluck's fee and eliminated all charges for services of Rendell except those rendered on the day of the accident.

It can readily be seen that defendants have been ordered to pay an unspecified amount, insofar as defendants or DSS is concerned. In the absence of other considerations, it would be appropriate to determine, as defendants contend, that

defendants need not pay any amount to DSS. There is, however, a controlling other consideration.

Section 68-716 (Reissue 1990) provides that an application for medical benefits "shall give a right of subrogation" to DSS, and that the subrogation "shall include every claim or right which the applicant may have against a third party . . . ." The statute concludes: "The third party shall be liable to make payments directly to [DSS] as soon as he or she is notified in writing of the valid claims for subrogation under this section." It is clear that DSS has given notice of its claimed subrogation rights, but the record does not show that there was any hearing on that issue. We hold that upon the filing of a notice of subrogation under § 68-716, in a workers' compensation case, DSS and any third party liable to DSS are entitled to a determination of the subrogation interest. DSS and defendants are entitled to notice and hearing on the issue of the claimed right of DSS to, and the amount of, subrogation. The cause is remanded for disposition of this issue.

Defendants' remaining two assignments of error relate to factual findings. Based on evidence in the record we cannot say that those findings are clearly wrong.

Defendants contend that since plaintiff's vision in his right eye improved for a period of time from the end of December 1988 to the middle of June 1989, such that he was able to work, the Workers' Compensation Court erred in awarding total disability during this time. We disagree. Although an employee may be capable of returning to work, or does actually return to work, this "does not in every case terminate an employee's total disability from a work-related injury and does not preclude a finding that the employee's total disability continues notwithstanding the return to work." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 471, 461 N.W.2d 565, 574 (1990). Thus, although plaintiff's corrected vision in the right eye did improve from 20/70 to 20/50 during this time, and plaintiff would not be blind on this basis, the vision in his left eye remained less than 20/400, and we cannot say that the compensation court erred.

Finally, defendants allege that there was insufficient evidence for the court to find that plaintiff's wife provided home health

care enough to warrant an award of $70 per week. Under Neb. Rev. Stat. § 48-120 (Reissue 1988), the Workers' Compensation Court "shall have the authority to determine the necessity, character, and sufficiency of any medical services furnished." This generally includes home nursing care. See *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910 (1990). In this case, the evidence shows that plaintiff's wife draws his insulin shots, checks his sugar levels, cuts his pills in half, puts drops in his eyes, lays out his clothes, drives for him, and reads to him. An injured employee may recover the reasonable value of necessary home nursing care furnished by his wife. *Spiker v. John Day Co.*, 201 Neb. 503, 270 N.W.2d 300 (1978). The Workers' Compensation Court did not err in determining that plaintiff's wife was entitled to reimbursement for her home health care services.

In his brief in this court, plaintiff contends that he is entitled to reasonable attorney fees of $67,536.79 under Neb. Rev. Stat. § 48-125 (Reissue 1988), based primarily on the contingent fee contract between plaintiff and his counsel and calculations made on the basis of plaintiff's possible compensation. We do not agree.

The awarding of attorney fees in compensation actions has been statutorily devised to be awarded in segments in accord with the result of appeals to a higher panel or to this court. There is no statutory authorization for an overall fee in this court to compensate plaintiff's attorney strictly on his contingent fee contract. We note that, in any event, there is no compliance with the provisions of Neb. Rev. Stat. § 48-108 (Reissue 1988).

The Workers' Compensation Court on rehearing found that there was a "reasonable controversy and that the defendant ha[d] secured a reduction in the original award in terms of medical expense and the calculation of the average weekly wage" and did not award attorney fees to plaintiff. Under § 48-125, when an employer applies for a rehearing before the compensation court and at such hearing obtains a reduction in the amount of the original award, the employee is not entitled to attorney fees. When an employer appeals to this court from a decision on rehearing and fails to obtain a reduction in the

amount of the award, the employee is entitled to a reasonable attorney fee for services of his attorney in this court.

Defendants in the case at bar have failed to obtain a reduction in the award on this appeal. The remand herein is only for the purpose of determining precise amounts of payments, and the remand cannot be construed to support any reduction in the award. Plaintiff is awarded $2,500 to be applied toward the fee due his attorney.

AFFIRMED IN PART, AND IN PART REMANDED.