PATTY TAPP AND AWC TRANSPORTATION, INC., APPELLANTS, V. BLACKMORE RANCH, INC., AND LOUIS J. FAHY, APPELLEES.

575 N.W. 2d 341

Filed February 27, 1998.    No. S-95-159.

Robert G. Pahlke and Andrew W. Snyder, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellants.

Patrick M. Connealy, Russell W. Harford, and Stefan T. Wall, of Crites, Shaffer, Connealy, Watson & Harford, P.C., for appellees.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

PER CURIAM.

The appellants, Patty Tapp (Tapp) and her employer, AWC Transportation, Inc., who was joined for subrogation purposes, brought this negligence action seeking damages for injuries sustained by Tapp. Tapp was riding in the sleeper berth of an 18-wheel tractor-trailer driven by her husband, Emmet Tapp, also an AWC Transportation employee, when it collided with the back of a stopped flatbed truck belonging to the appellee Louis J. Fahy, owner of appellee Blackmore Ranch, Inc.

The district court for Dawes County found, and so instructed the jury, that Emmet Tapp, a nonparty to the case, was negligent as a matter of law and was a proximate cause of the accident. The district court then instructed the jury regarding "efficient intervening cause." We conclude that this combination of instructions was misleading and prejudiced Tapp's right to a fair trial. Accordingly, we reverse, and remand for a new trial.

## BACKGROUND

### SCENE OF COLLISION

The collision occurred on October 6, 1991, at approximately 6:15 p.m. on U.S. Highway 20, 4½ miles west of Chadron in Dawes County, Nebraska. The front of Tapp's westbound 18-wheeler collided with the back of Fahy's 1955 International flatbed truck, which was stopped on the highway.

Highway 20 is a paved two-lane highway. Each traffic lane is approximately 12 feet wide, and there is a 3-foot paved shoulder from the outside of each fog line to the edge of the pavement. A guardrail runs along the north side of the highway, 2 to 3 feet north of the outside edge of the pavement. Just north of the guardrail is an embankment.

As Highway 20 leaves Chadron, it runs in a westerly direction and then begins turning south so that at the scene of the collision, it is running generally from the northeast to the southwest. There is a small rise in the highway, the crest of which is four-tenths of a mile east of the scene. From the crest of the rise, the highway slopes down and then begins a gradual upward slope toward the scene.

## Events Prior to Collision

Fahy was accompanied by Frank Carlson on a trip from the Fahy family ranch near Mannville, Wyoming, to a ranch near Chadron. They were followed by Fahy's wife, who was driving a pickup. Upon reaching the ranch, five head of cattle were loaded onto the flatbed truck and three head onto the pickup. The group then began the return trip to Wyoming. As Fahy and Carlson were entering Chadron, Carlson heard a thumping sound. Fahy stopped at a truckstop and checked the tires and lugnuts. He was able to turn one of the nuts on the right outside dual one-eighteenth to one-sixteenth of a turn. The group then continued traveling west on Highway 20.

As Fahy and Carlson drove over the rise in Highway 20 and started up the gradual slope to the west, they heard a grinding noise and felt a vibration. Fahy took his foot off the accelerator, but did not apply the brakes because he thought the sound might be a brake problem, and let the truck coast to a stop, pulling toward the right side of the highway. The truck stopped in a position that covered one-half to two-thirds of the westbound lane. Upon inspection, Fahy discovered that the right rear duals were loose, the threads on the lugbolts to the inside dual were stripped, and the bolts had "beat out" holes in the wheel frame.

Fahy admits he could have pulled his truck closer to the guardrail. However, Fahy testified he pulled the truck over as far as he could but still have room to work on the right side of the truck. Fahy stated he decided not to move the truck because he was afraid the rear tire would come off and the truck would either tip over or the cattle would be thrown out of the truck and run loose on the highway. Instead, Fahy decided to warn approaching traffic by activating the truck's hazard lights, and he sent his wife back to Chadron to get help.

David Mack was traveling west when he saw Fahy's truck "from about a quarter mile away" and stopped to help. He offered to pull Fahy's truck off the road using a towrope, but Fahy declined. Mack drove to the top of the hill, 1,000 to 1,500 feet west of Fahy's truck, turned around, parked on the south side of the highway, and activated the 9-inch amber beacon on top of his truck. The three men then set up a warning system in which Fahy stood 50 to 100 yards behind his truck. When westbound vehicles came over the rise to the east, Fahy would step out onto the highway, wave his arms, and direct the traffic around his truck. Carlson stood beside Fahy's truck on the south side of the highway and directed vehicles around it. Mack stopped eastbound traffic and made sure that the way was clear before permitting the traffic to pass.

According to Carlson, several trucks and approximately 50 to 60 cars passed safely through the scene while the truck was disabled; about 30 from the east, and 20 from the west. According to Mack, 10 to 15 vehicles passed safely through the scene from west to east and the same number from east to west. Fahy thought vehicles were coming through at the rate of about one per minute.

## COLLISION

When Fahy saw the truck Tapp was riding in come over the rise, he was standing along the guardrail. He walked to the middle of the highway, waving his arms. The truck continued to approach without slowing down. Fahy started moving to the north, still waving his arms. Before the truck passed Fahy, he stepped over the guardrail on the north side of the highway. Fahy then saw the truck's brake lights come on and heard the airbrakes lock up, the tires squeal, and a big bang.

Emmet Tapp testified as follows:

> I had the cruise set on 55 mile an hour and the sun was starting to set at its brightest peak of the day, I had the sun visor down and I was coming out of Gordon and I peaked this hill and I started coming down on a downgrade and I seen this, I kind of glanced over and I seen this guy waving and pretty soon I looked and seen this truck, I said oh, shit and I hit the brakes and all I could do was keep the

truck on the road and I just come to a skid, hit him, and knocked the truck off.

The resulting collision caused Tapp, who was in the sleeper portion of the truck, to be thrown forward, causing injury. Her face hit the back of the passenger seat, and she subsequently fell into a space between the seat and the mattress, striking her chin on a metal bar which holds the sleeper mattress in place. Tapp appeals from the jury verdict in favor of Fahy.

## ASSIGNMENTS OF ERROR

Rephrased and reorganized, Tapp alleges that the district court erred in (1) ruling as a matter of law that Emmet Tapp, a nonparty, was negligent and a proximate cause of the accident; (2) giving Fahy's proposed instruction on proximate cause, which included the term "efficient intervening cause" in its definition; (3) failing to direct a verdict that there was no intervening cause involved in the accident; (4) refusing to give her proposed instruction on Fahy's burden of proof regarding Fahy's alleged violation of Neb. Rev. Stat. § 60-6,164 (Reissue 1993); (5) failing to direct a verdict that it was both practicable and possible for Fahy to remove his vehicle from the road; (6) failing to direct a verdict that Fahy was negligent as a matter of law; (7) failing to give her proposed instruction on the definition of impossibility; (8) failing to give her proposed instruction that she was not negligent and that Emmet Tapp's negligence could not be imputed to her; (9) excluding Fahy's and Calvin Cook's testimony bearing upon Fahy's alleged negligence; (10) denying her the opportunity to present evidence bearing upon the negligence of Emmet Tapp; (11) failing to give her proposed instruction on the effect of findings; (12) making improper comments, in facial expressions and body language, which gave the jurors an appearance of judicial bias; (13) having and encouraging improper contact with the foreman of the jury after jury selection; and (14) overruling her motions for new trial and judgment notwithstanding the verdict.

## STANDARD OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the district court's ruling. *Law Offices of Ronald J. Palagi v. Dolan*, 251 Neb. 457, 558 N.W.2d

303 (1997); *Olson v. SID No. 177*, 251 Neb. 380, 557 N.W.2d 651 (1997).

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996); *Hamernick v. Essex Dodge Ltd.*, 247 Neb. 392, 527 N.W.2d 196 (1995).

All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Heye Farms, Inc. v. State*, 251 Neb. 639, 558 N.W.2d 306 (1997).

A party's right to a fair trial may be substantially impaired by jury instructions that contain inconsistencies or confuse or mislead the jury. *Hamernick v. Essex Dodge Ltd., supra.*

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Kent v. Crocker*, 252 Neb. 462, 562 N.W.2d 833 (1997); *Gustafson v. Burlington Northern RR. Co.*, 252 Neb. 226, 561 N.W.2d 212 (1997).

## ANALYSIS

### Assignments of Error Nos. 1, 2, and 3

Tapp contends that the district court erred in ruling as a matter of law that Emmet Tapp, a nonparty, was negligent and a proximate cause of the accident. Tapp further asserts the district court erred in giving Fahy's proposed instruction on proximate cause when that instruction included the term "efficient intervening cause" in its definition. Tapp also argues the district court should have directed a verdict that there was no intervening cause involved in the accident.

At the conclusion of Tapp's case in chief, Fahy made a motion for a directed verdict on the issue of Emmet Tapp's negligence. The district court originally granted the motion. However, following some discussion of the issue, the district court

stated that it did not know if a directed verdict was right, but if it came to an instruction on the issue, that was how the court would instruct the jury because, according to Nebraska law, Emmet Tapp was negligent. The district court denied Fahy's motions for directed verdicts on the issues of whether Emmet Tapp's negligence was the proximate cause of the collision and whether Emmet Tapp's negligence was a proximate cause of the collision. Fahy renewed these motions at the end of his case in chief, and the motions were again denied. However, prior to deliberations, the district court instructed the jury as follows: "The court finds, and you are instructed, that Emmet Tapp was negligent as a matter of law because he failed to maintain his vehicle under reasonable control and failed to maintain a proper lookout, and that his negligence was a proximate cause of the accident." Thus, the district court did not specifically direct a verdict on the issue of Emmet Tapp's negligence. Rather, the court determined that Emmet Tapp was negligent as a matter of law and instructed the jury that this was the case.

We have never addressed the issue of whether a jury may be instructed that a third person who is not a party to the action is negligent as a matter of law. Although there is little relevant precedent from other jurisdictions regarding the issue, one case is on point.

In *Schreiber v. Smelting Co.*, 157 Ohio St. 1, 104 N.E.2d 4 (1952), the defendant parked a truck in a manner that caused it to block a portion of the street. The plaintiff was a passenger who sustained injuries after the car she was riding in collided with the truck. The driver of the car was not a party to the lawsuit. Ohio followed an "assured clear distance" rule under which a motorist is negligent if he or she does not control a vehicle so that it may be brought to a stop within the assured clear distance between the vehicle and any discernible object within the vehicle's path. The court in *Schrieber* concluded that the driver of the car was negligent as a matter of law under the "assured clear distance" rule and that the defendant was entitled to establish that the actions of the driver constituted an efficient independent cause. Accordingly, the court determined it was permissible for the trial court to instruct the jury that the driver was negligent as a matter of law and that if the jury determined

the driver's negligence to be the sole cause of the collision, the defendant could not be held liable.

As in *Schreiber*, we adhere to the "range of vison" rule, under which

> it is negligence as a matter of law for a motorist to drive his vehicle on a highway in such a manner that he is unable to stop or turn aside in time to avoid a collision with an object within his range of vision. . . . This rule has been applied to driving where vision is impaired by storms or weather conditions such as snow, ice, or fog. Such factors are held to be conditions and not intervening causes, and require drivers to exercise a degree of care commensurate with the circumstances.

*C. C. Natvig's Sons, Inc. v. Summers*, 198 Neb. 741, 745-46, 255 N.W.2d 272, 276 (1977).

In the instant case, the only evidence adduced by Tapp to rebut the evidence of Emmet Tapp's negligence was Emmet Tapp's own testimony that the sun was in his eyes at the time of the collision. We conclude that sunlight, like fog, is a condition that requires drivers to exercise a degree of care commensurate with the circumstances. Thus, as in *Schreiber*, there is no disputed fact that Emmet Tapp was negligent as a matter of law, and Fahy is entitled to a finding that Emmet Tapp was negligent as a matter of law. Accordingly, we hold that it is permissible to instruct a jury that a third party who is not a party to the action is negligent as a matter of law, and we conclude that Tapp's first assignment of error is without merit. However, this conclusion does not end our inquiry because the instruction regarding Emmet Tapp's negligence was combined with other instructions, and the effect of the combination of those instructions must be considered.

Instead of instructing the jury on proximate cause from the pattern instruction recommended at NJI2d Civ. 3.41, the district court gave the following instruction:

### PROXIMATE CAUSE

> A proximate cause is a cause that produces a result in a natural and continuous sequence, unaccompanied by an efficient intervening cause, and without which the result would not have occurred.

## CONCURRING CAUSE

Where the independent negligent acts or failures to act of more than one person combine to proximately cause the same result, each such act or failure to act is a proximate cause, and each such person may be held responsible for the entire result. This is true though some may have been more negligent than others. It is no defense that all those who might have been held responsible are not parties to this case.

## EFFICIENT INTERVENING CAUSE

An efficient intervening cause is a new and independent act, itself a proximate cause of a result, which breaks the causal connection between the original wrong and the result. A person is not legally responsible for a result if it would not have resulted but for the interposition of an efficient intervening cause, which he should not have reasonably anticipated or reasonably foreseen.

The determination of causation is ordinarily a question for the trier of fact. *Miller v. Goodyear Tire & Rubber Co.*, 239 Neb. 1014, 480 N.W.2d 162 (1992); *Kidd v. Winchell's Donut House*, 237 Neb. 176, 465 N.W.2d 442 (1991). However, where, upon the evidence produced, only one inference can be drawn, it is for the court to decide whether a given act or series of acts is the proximate cause of the injury. *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983); *Starlin v. Burlington Northern, Inc.*, 193 Neb. 619, 228 N.W.2d 597 (1975).

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996); *Hamernick v. Essex Dodge Ltd.*, 247 Neb. 392, 527 N.W.2d 196 (1995). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Heye Farms, Inc. v. State*, 251 Neb. 639, 558 N.W.2d 306 (1997); *McLaughlin v. Hellbusch*, 251 Neb. 389, 557 N.W.2d 657 (1997).

We have defined "efficient intervening cause" as the new and independent conduct of a third person, which itself is a proximate cause of the injury in question and breaks the causal connection between the original conduct and the injury. *Looney v. Pickering*, 232 Neb. 32, 439 N.W.2d 467 (1989). An intervening cause will act to cut off a tort-feasor's liability only when the intervening cause is not foreseeable. *Id.*

As a matter of policy, Tapp asks this court to direct the trial courts to delete any reference to the term "efficient intervening cause" when instructing juries on proximate cause. Tapp asserts that the inclusion of "efficient intervening cause" in the instruction is unnecessary and inappropriate because the term is subsumed in the definition of proximate cause. We recently reached this conclusion in *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997), and instructed the district courts to discontinue instructing juries regarding efficient intervening cause. However, in the instant case, the instruction regarding efficient intervening cause was given before *Sacco* was decided. Accordingly, our direction to the district courts in *Sacco* is inapplicable to this case.

In the alternative, Tapp contends that "efficient intervening cause" should have been stricken from the proximate cause instruction because the intervening cause alleged by Fahy was foreseeable. Tapp further contends the instruction was prejudicially misleading given that the district court previously instructed the jury that Emmet Tapp was negligent and a proximate cause of the accident. In particular, Tapp alleges that she was prejudiced by the combination of the proximate cause instruction, defined in part as "unaccompanied by an efficient intervening cause," with the instruction that Emmet Tapp was a proximate cause of the accident.

In general, we have concluded that it is foreseeable that oncoming traffic may collide with a disabled vehicle stopped on a highway and that the owner of such a vehicle has a duty to adequately warn of the hazardous condition or remove the vehicle from the highway. See *Looney v. Pickering, supra.* Whether Fahy should reasonably have foreseen that the operator of a vehicle would run into his truck, given the steps he took to warn oncoming traffic, and whether Fahy breached a duty to Tapp in

failing to remove his truck from the highway are questions of fact for the jury. Thus, the district court was not in error in refusing to direct a verdict that there was no intervening cause involved in the accident. However, the combination of instructions given by the court, together with the definition of efficient intervening cause, was in error.

The combination of instructions that Emmet Tapp was negligent and was a proximate cause of the accident, when combined with the definition of efficient intervening cause, could easily mislead the jury to believe that Emmet Tapp's negligence was necessarily an efficient intervening cause. The definitional instruction on efficient intervening cause given by the district court states in pertinent part that "[a]n efficient intervening cause is [1] a new and independent act, [2] itself a proximate cause of a result, [3] which breaks the causal connection between the original wrong and the result." Given the district court's instruction that Emmet Tapp's negligence was a proximate cause of the accident, the jury had no choice but to find that Emmet Tapp's negligence was (1) a new and independent act, (2) itself a proximate cause of the result. This combination unduly emphasized the alleged negligence of nonparty Emmet Tapp. Under these circumstances, the jury could easily be confused by the instruction and believe it was precluded from finding that Fahy was also a proximate cause of the accident and that the causal connection had not been broken. Thus, we agree with Tapp that the instructions, taken as a whole, were prejudicial and adversely affected her right to a fair trial. Accordingly, we reverse, and remand for a new trial.

Because we conclude that the instructions, taken as a whole, acted to prejudicially affect Tapp's right to a fair trial, we need not address Tapp's other assignments of error. However, recognizing that a retrial of this case is possible, we will address those of Tapp's assignments of error which have issues that are likely to come up again on retrial.

## ASSIGNMENT OF ERROR NO. 4

Tapp contends the district court erred in refusing to give her proposed instruction on Fahy's burden of proof regarding Fahy's alleged violation of § 60-6,164. Tapp contends that she

was prejudiced by the district court's refusal to give her tendered instruction because evidence of a violation of § 60-6,164 is evidence of Fahy's alleged negligence. See, *Horst v. Johnson*, 237 Neb. 155, 465 N.W.2d 461 (1991); *Peterson v. Skiles*, 173 Neb. 470, 113 N.W.2d 628 (1962).

Section 60-6,164 states in pertinent part, and the district court instructed the jury in instruction No. 5, as follows:

> (1) No person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon a roadway outside of a business or residential district when it is practicable to stop, park, or leave such vehicle off such part of a highway, but in any event an unobstructed width of the roadway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.

> . . . .

> (4) This section shall not apply to the driver of any vehicle which is disabled while on the roadway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

The district court also gave instruction No. 4, which provided:

> It is claimed that [§ 60-6,164] was violated. If you find that is so, that does not necessarily prove negligence. The violation of a statute is evidence that you may consider, along with all of the other facts and circumstances of the case, in deciding whether or not there was any negligence.

Tapp proposed the following instruction, No. 6A, which was refused by the district court:

> If any portion of [Fahy's] truck was standing or stopped in the main traveled portion of the roadway, that creates a legal presumption that [Fahy] has violated [§ 60-6,164].

> [Fahy] has the burden of overcoming the legal presumption, and can do so *only* by showing that it was impossible for him to remove his truck from the main traveled portion of the roadway.

(Emphasis supplied.)

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996); *Kirchner v. Wilson*, 251 Neb. 56, 554 N.W.2d 782 (1996).

In *Fleischer v. Rosentrater*, 190 Neb. 219, 223, 207 N.W.2d 372, 374 (1973), this court stated:

> The evidence clearly supports . . . that the Fleischer vehicle was standing and stopped in the main-traveled portion of the roadway. Our court has consistently held that such facts constitute a prima facie violation of [§ 60-6,164] sufficient to make a jury question and that it is incumbent upon the person charged to show the existence of facts which take him out of the scope of the statute.

See, also, *Horst v. Johnson, supra*; *Huston v. Robinson*, 144 Neb. 553, 13 N.W.2d 885 (1944).

In other words, a prima facie violation of § 60-6,164 is established by presenting evidence that the person charged stopped, parked, or left a vehicle standing upon the main-traveled portion of a roadway. If a prima facie case is established, in order to create a question of fact for the jury, it becomes incumbent upon the person charged to present evidence that he or she did not violate the statute. Thus, the portions of Tapp's proposed instruction that state, "If any portion of [Fahy's] truck was standing or stopped in the main traveled portion of the roadway, that creates a legal presumption that [Fahy] has violated [§ 60-6,164]" and "[Fahy] has the burden of overcoming the legal presumption" are correct statements of law.

Tapp's proposed instruction further states that Fahy can meet his burden of overcoming the presumption that he violated § 60-6,164 "only by showing that it was impossible for him to remove his truck from the main traveled portion of the roadway." However, a violation of § 60-6,164 occurs when a person stops, parks, or leaves standing any vehicle on a roadway when it is practicable to stop, park, or leave such vehicle off such part of the roadway. Thus, once a prima facie violation is estab-

lished, the person charged can create a jury question by presenting evidence either that his or her vehicle was not stopped, parked, or left standing on the roadway or that it was not practicable to stop, park, or move the vehicle off of the roadway.

Accordingly, the portion of Tapp's tendered instruction which states Fahy can overcome the presumed violation of § 60-6,164 "only by showing that it was impossible for him to remove his truck from the main traveled portion of the roadway" is not a correct statement of law. Thus, the district court did not err in refusing Tapp's proposed instruction.

### ASSIGNMENT OF ERROR NO. 5

Tapp next asserts the district court erred in failing to direct a verdict that it was both practicable and possible for Fahy to remove his vehicle from the road. We read this assigned error to allege the district court erred in failing to direct a verdict that Fahy violated § 60-6,164.

When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law. *Traphagan v. Mid-America Traffic Marking,* 251 Neb. 143, 555 N.W.2d 778 (1996); *Reavis v. Slominski,* 250 Neb. 711, 551 N.W.2d 528 (1996).

Tapp established a prima facie violation of § 60-6,164 by presenting evidence that Fahy stopped and left his truck standing on the highway. As such, the burden shifted to Fahy to create a jury question by presenting evidence either that his truck was not stopped and left standing on the highway or that it was not practicable to move his truck off of the highway.

Fahy did not dispute that his truck was stopped and left standing on the highway. However, Fahy argued it was not practicable to move his truck off of the highway. He testified he pulled the truck over as far as he could to still have room to work on the right side. He decided not to move the truck because he was afraid that the rear tire would come off and either the truck would tip over or the cattle would be thrown out and run loose on the highway.

Thus, Fahy met his burden of creating a question of fact for the jury, on which question reasonable minds can differ, by presenting evidence that it was not practicable to move his truck off of the highway. As a result, the district court did not err in refusing to direct a verdict that Fahy violated § 60-6,164.

### Assignment of Error No. 6

Tapp next contends that the district court erred in failing to direct a verdict that Fahy was negligent as a matter of law. Tapp argues that Fahy was negligent as a matter of law because Fahy violated § 60-6,164, Fahy should reasonably have foreseen that a motorist would run into his truck, and Fahy failed to properly tighten the lugnuts on the wheels of his truck.

In regard to whether Fahy violated § 60-6,164, Fahy met his burden of creating a question of fact for the jury by presenting evidence that it was not practicable to move his truck off the highway. (See prior discussion on assigned error No. 5.) With respect to whether Fahy should reasonably have foreseen that the operator of a vehicle would run into his truck, Fahy created a question of fact for the jury by presenting evidence that he, Carlson, and Mack took steps to warn oncoming traffic that the truck was stopped on the highway. (See prior discussion on assigned error No. 3.)

As to whether Fahy was negligent in failing to properly tighten the lugnuts on the truck's duals, Tapp's expert Cook testified that Fahy should have jacked the truck up, removed the outside dual, and tightened the inside dual. Ordinary negligence is doing something that a reasonably careful person would not do under similar circumstances, or failing to do something that a reasonably careful person would do under similar circumstances. *Hearon v. May*, 248 Neb. 887, 540 N.W.2d 124 (1995). Fahy testified that this was the first time he had ever had lugnuts come loose and that after he initially heard the "thumping" sound, he stopped at a truckstop in Chadron and attempted to tighten the outside duals. Thus, whether Fahy failed to tighten the lugnuts, as a reasonably careful person would do under similar circumstances, is a question of fact for the jury on which reasonable minds can differ. See, *Traphagan v. Mid-America Traffic Marking, supra*; *Reavis v. Slominski, supra*. For these

reasons, the district court did not err in refusing to direct a verdict that Fahy was negligent as a matter of law.

### ASSIGNMENT OF ERROR NO. 7

Next, Tapp contends the district court erred in failing to give her proposed jury instruction on the definition of "impossibility." Tapp's proposed jury instruction No. 4A provided: "Imposs-ibility is defined to mean that which, in the course of nature no man can do or perform." Tapp requested this instruction in order to clarify the meaning of "impossible" as that term appears in 60-6,164(4).

A litigant is entitled to have the jury instructed only upon those theories of the case which are presented by the pleadings and which are supported by competent evidence. *McLaughlin v. Hellbusch*, 251 Neb. 389, 557 N.W.2d 657 (1997); *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996). Fahy did not plead or argue that it was impossible to avoid leaving his truck on the highway. As stated, Fahy argued it was not practicable to move his truck off of the highway. Thus, subsection (4) of § 60-6,164 was never an issue at trial. For this reason, the district court did not err in refusing to give Tapp's proposed instruction on impossibility.

### ASSIGNMENT OF ERROR NO. 8

Next, Tapp asserts that the district court erred in failing to give her proposed instruction that she was not negligent and that Emmet Tapp's negligence could not be imputed to her. Tapp's proposed instruction No. 3A states:

> The court has already ruled, as a matter of law, that Patty Tapp is guilty of no negligence whatsoever in this matter. The court has also ruled, as a matter of law, that any negligence of Emitt [sic] Tapp cannot be attributed to Patty [Tapp], and should not be considered by you in your deliberations on this case.

To establish reversible error from a court's failure to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *Traphagan v. Mid-America Traffic Marking*,

251 Neb. 143, 555 N.W.2d 778 (1996); *Kirchner v. Wilson*, 251 Neb. 56, 554 N.W.2d 782 (1996). A jury instruction that misstates issues or defenses and has a tendency to mislead the jury is erroneous. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994); *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993). See, also, *Kirchner v. Wilson, supra.*

Not only does Tapp's proposed instruction state that she was not negligent and that Emmet Tapp's negligence could not be imputed to her, but it also states that any negligence on the part of Emmet Tapp "should not be considered by [the jurors in their] deliberations on this case." Because the jurors must consider Emmet Tapp's negligence in their deliberations, Tapp's proposed instruction is not a correct statement of the law and is misleading. As a result, the district court did not err in refusing Tapp's proposed instruction.

## CONCLUSION

We conclude the district court's instruction that Emmet Tapp was negligent and a proximate cause of the accident, when combined with an instruction regarding efficient intervening cause, was misleading and prejudiced Tapp's right to a fair trial. Accordingly, we reverse, and remand for a new trial. We further conclude that Tapp's assignments of error Nos. 3 through 8 are without merit. We need not address Tapp's remaining assignments of error.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, C.J., participating on briefs.

GERRARD, J., concurring.

Because the jury instructions, taken as a whole, were prejudicial and adversely affected Patty Tapp's right to a fair trial, I concur in the judgment of reversal in the instant case. However, I write separately to address the issue of properly instructing a jury in the event that a nonparty is, as a matter of law, found to be negligent by the trial court.

Although I agree with the majority that it is not error per se to instruct the jury that a nonparty third person is negligent as a matter of law, this case illustrates why it is rarely a good idea to give such an instruction. Since the determination of causation is ordinarily a question for the trier of fact, *Millard v. Goodyear*

*Tire & Rubber Co.*, 239 Neb. 1014, 480 N.W.2d 162 (1992), that determination should be made on an even playing field and with instructions clearly delineating the fact finder's role.

Thus, if a nonparty is, as a matter of law, found to be negligent, how should the jury be fairly instructed regarding the issues of proximate cause and concurrent cause? Even though we have never been confronted with this precise issue, the case of *Schreiber v. Smelting Co.*, 157 Ohio St. 1, 104 N.E.2d 4 (1952), cited by the majority, is instructive in answering the question. In *Schreiber*, the plaintiff sued the defendant to recover for personal injuries sustained in a collision between an automobile in which she was a passenger and a truck owned by the defendant. The defendant's truck had been placed across the street so that it blocked the east portion and protruded approximately 2 feet into the west portion of the street. The district court instructed the jury, as a matter of law, that the driver of the car in which the plaintiff was riding was guilty of negligence. The district court then instructed the jury in pertinent part:

"[I]f you find by a preponderance of the evidence that [the nonparty driver's] negligence was *the sole cause* of this collision, this plaintiff cannot recover in this action. If, however, on the other hand, she has proven [defendant truck owner] was guilty of negligence, and that that negligence upon the part of the defendant either directly and proximately caused the collision, or directly and proximately contributed to cause the collision, then she is entitled to recover in this action."

(Emphasis supplied.) *Id.* at 4, 104 N.E.2d at 6.

The jury returned a verdict in favor of the defendant, and on appeal, the Ohio Supreme Court affirmed, stating:

The trial judge did not submit to the jury the question whether the third person was guilty of negligence but charged . . . that the third person was, as a matter of law, guilty of negligence and that if the negligence of the third person so established was found by the jury to have been *the sole cause* of the collision, the defendant could not be held liable. The charge of the trial court we believe was free of error.

(Emphasis supplied.) *Id.* at 9, 104 N.E.2d at 8.

In the same vein, the Nebraska Supreme Court Committee on Civil Practice and Procedure suggests that the instruction on proximate cause, NJI2d Civ. 3.41; the instruction on concurring cause, NJI2d Civ. 3.42; and the instruction on the conduct of a nonparty third person as the sole and proximate cause, NJI2d Civ. 3.44, are sufficient instructions for the jury under these circumstances. I agree.

NJI2d Civ. 3.44 provides:

### PROXIMATE CAUSE—CONDUCT OF NONPARTY THIRD PERSON

The defendant claims that [insert name of nonparty third person]'s conduct was the only proximate cause of the [accident]. By doing so, the defendant is simply denying that [his/her] conduct was a proximate cause of the [accident]. Remember, the plaintiff must prove that the defendant's negligence was a proximate cause of the [accident].

Like the *Schreiber* instruction, NJI2d Civ. 3.44, when combined with the instructions on proximate cause and concurring cause, does not unduly emphasize the alleged negligence of either the defendant or a nonparty third person, but leaves the determination of proximate cause fairly in the hands of the jury. When reviewing the jury instructions in the instant case, that proper balance was lacking and adversely affected Tapp's right to a fair trial.

With the foregoing in mind, I concur in the judgment.

WHITE, C.J., and McCORMACK, J., join in this concurrence.