MARTIN EVERTS, APPELLANT, V. JAN HARDCOPF-BICKLEY,
DOING BUSINESS AS BICKLEY & ASSOCIATES, APPELLEE.
595 N.W. 2d 911

Filed June 25, 1999.    No. S-98-226.

James E. Harris and Britany S. Shotkoski, of Harris, Feldman Law Offices, for appellant.

R. Douglas Stave and, on brief, Ronald H. Stave for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Martin Everts brought suit, claiming that a vocational reha-bilitation counselor was negligent in recommending that he

work in a job which exceeded his physical capabilities and thereby caused him injury. The jury returned a verdict in favor of the rehabilitation counselor, and Everts timely appealed.

## SCOPE OF REVIEW

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998).

Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Fales v. Books*, 253 Neb. 491, 570 N.W.2d 841 (1997).

## FACTS

On September 9, 1991, Everts injured his lower back during the course of his employment with McGill Restoration. He visited his family physician, Dr. Robert Brown. Brown referred Everts to Dr. Louis Tribulato, an orthopedic surgeon, who diagnosed Everts with a moderate lumbar strain. Everts was given restrictions of moderate to light work with no lifting over 50 pounds.

Everts also underwent a "work hardening" program, and on completion of the program, he was evaluated as performing within the light to medium category of physical demand characteristics of work. The evaluator noted at that time that Everts was "not functioning at the physical demand characteristics" required for his job as a caulker/bricklayer, that his symptoms increased when he lifted increased weight, and that he was experiencing decreased lumbar flexibility. Thus, the evaluator opined that Everts could not return to his previous position as a caulker/bricklayer, and it was recommended that Everts consult with a vocational rehabilitation counselor regarding future potential employment opportunities.

After Everts completed the work hardening program, Brown provided McGill Restoration's workers' compensation carrier with a diagnosis. Brown diagnosed Everts as having a herniated lumbar disk and persistent pain in his back. Brown noted that he agreed with the recommendations of the work hardening pro-

gram. He also concluded that Everts was not capable of returning to his prior profession and, thus, needed to be retrained. In Brown's opinion, Everts suffered from a permanent partial disability of 15 percent to his body as a whole.

In January 1992, at the request of the workers' compensation carrier, Everts saw Dr. Anil Agarwal for an independent medical exam. Agarwal diagnosed Everts with a bulging lumbar disk at L5-S1 and chronic lumbar strain. Agarwal determined that further medical treatment or physical therapy was not necessary at that time; however, he recommended that Everts not lift over 50 pounds and that Everts avoid prolonged or repeated bending and stooping. Agarwal acknowledged that Everts' current job required him to lift in excess of 50 pounds, and thus, Agarwal opined that Everts' job needed to be modified.

Everts was next sent to Bickley & Associates to undergo vocational rehabilitation. Jan Hardcopf-Bickley (Bickley) was assigned as Everts' counselor. She was provided with Everts' medical history and informed of the physical restrictions placed on Everts by his doctors. During the rehabilitation, Bickley contacted Tim McGill, president of McGill Restoration, to see whether he had any positions available which matched the physical restrictions placed on Everts. She faxed McGill seven pages of a report regarding Everts' work hardening program. However, she omitted a page of the report stating that Everts could not return to his previous position as a caulker/bricklayer. McGill did not receive any other medical records or reports regarding Everts' restrictions. McGill informed Bickley that he did not have many jobs which would not exceed Everts' physical restrictions. However, he did have a temporary position which Everts could fill. Based upon the information provided by Bickley, McGill agreed to offer Everts a job which McGill believed to be within Everts' physical restrictions.

Thereafter, Bickley and Everts met to discuss various job opportunities, including McGill's offer to rehire Everts for a short period of time within the confines of his physical restrictions. Bickley visited the potential jobsite, weighed the equipment Everts would be using, and investigated the body positions Everts would be required to assume. Bickley then recommended that Everts return to work for McGill Restoration.

At trial, Bickley testified that although she did not provide McGill with copies of all of Everts' medical records or a copy of each doctor's recommendation, she did fax McGill a partial copy of the work hardening report and informed McGill generally of the restrictions placed on Everts. In addition, McGill testified that he knew Everts could lift only up to a certain weight and that Everts needed to be assigned jobs which did not require bending or stooping.

Everts returned to work for McGill Restoration on April 10, 1992, and 4 days later, he was sent to the Omaha Country Club to cut out a joint on a swimming pool and prepare it for caulking. The joint was to be cut at a distance of 8 to 12 inches from the top of the pool. In order to perform this work, Everts was required to utilize a grinder that weighed about 25 pounds.

Before beginning work, Everts performed stretching exercises he had learned at the work hardening program. He then began grinding in the shallow end of the pool, where the work could be performed approximately waist high. As Everts reached the deeper end of the pool, he was required to raise the grinder over his head. While working with the grinder over his head, Everts experienced a sudden, stabbing pain in his lower back, and he was no longer able to hold the grinder.

Everts left the pool and drove to Immanuel Medical Center. He was diagnosed by Tribulato with a herniated disk at L5-S1 and a bulging disk at L4-5. Everts subsequently underwent a laminectomy and diskectomy, and as a result, he was given a permanent impairment rating of 10 percent of his back and total body.

Everts subsequently sued Bickley, claiming that she had been negligent in recommending that he return to work for McGill Restoration. The jury returned a verdict in favor of Bickley, and Everts timely appealed.

## ASSIGNMENTS OF ERROR

Everts claims the trial court erred (1) in instructing the jury on the defense of assumption of risk, which was clearly inapplicable and unsupported by the evidence; (2) in refusing to allow Everts' expert to testify as to Bickley's reputation of character for truthfulness in the vocational rehabilitation community; (3)

in failing to take judicial notice of and instruct the jury on Neb. Rev. Stat. § 71-1,132.04 (Reissue 1990); (4) in sustaining Bickley's objections to improper impeachment; (5) in failing to instruct the jury to disregard Bickley's testimony; (6) in failing to receive into evidence a cover letter from Bickley's undergraduate university; (7) in overruling Everts' motion for judgment notwithstanding the verdict; and (8) in failing to grant Everts' motion for a new trial.

## ANALYSIS

Over Everts' objection, the jury was instructed regarding assumption of risk. Everts argues that the trial court erred in giving this instruction. In response, Bickley asserts that any error in instructing the jury as to assumption of risk was harmless, since Bickley was entitled to a directed verdict on the issue of negligence. Bickley, however, did not cross-appeal the denial of her motion for directed verdict.

Everts alleged that Bickley was negligent in recommending that he return to work in a job which demanded work clearly in excess of the physical restrictions recommended by Everts' doctors. Everts contends that Bickley was negligent in failing to reasonably analyze the job requirements and the physical demands of the employment to which Bickley recommended that Everts return. According to Everts, Bickley did not place him in a job where he would be assured that he could work within the restrictions placed upon him by his treating physicians. Everts argues that since he was acting within the restrictions placed upon him by his physicians at the time of his injury and Bickley told him that he could work within those restrictions, he did not assume the risk of Bickley's negligence.

In order to submit the issue of assumption of risk to the jury, the evidence must show that the plaintiff knew of the danger, understood the danger, and voluntarily exposed himself or herself to the danger which proximately caused the plaintiff's injury. See *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994). When a defendant pleads the affirmative defense of assumption of risk in a negligence action, the defendant has the burden to establish the elements of assumption of the risk before that defense, as a question of fact, may

be submitted to the jury. *Talle v. Nebraska Dept. of Soc. Servs.*, 249 Neb. 20, 541 N.W.2d 30 (1995). The jury in the case at bar was instructed on the affirmative defense of assumption of risk, and Everts claims that the trial court erred in tendering this instruction.

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998). It is the burden of the complaining party to establish that judicial prejudice has occurred. *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 530 N.W.2d 230 (1995).

The pertinent facts surrounding Everts' injury are as follows: Everts testified that the work he did for McGill Restoration when he returned to work was within his physical restrictions. Everts stated that on the day of the accident, he knew what task he would perform at the pool. Bickley had contacted McGill about a job for Everts within his physical restrictions, and Bickley testified that she obtained confirmation in writing that McGill could provide Everts with a job within the restrictions imposed by his doctors. Bickley testified that she weighed and evaluated the equipment Everts would be using and that after performing these tests, she determined Everts could return to work for McGill Restoration on a short-term basis.

On the date of Everts' injury, he and a coworker were assigned to caulk the Omaha Country Club's swimming pool. The coworker did not arrive at the site on time, and thus, Everts began to operate the grinder which was needed for the job. Everts testified that the grinder weighed about 25 pounds and that although he never weighed it, he believed that it was within his restrictions. There is nothing in the evidence to contradict the fact that the grinder weighed about 25 pounds. When Everts began working, he was holding the grinder waist high. As he moved along the side of the pool, the floor deepened, which required Everts to hold the grinder above his head. While he was in this position, he felt a sharp pain in his back and had to cease work.

The restrictions of which Everts was aware did not prohibit him from lifting a 25-pound object. Nor was Everts prohibited from lifting items over his head. Therefore, there is no evidence to show that Everts was not acting within the confines of his restrictions at the time of the injury. Everts testified on cross-examination that the work he did for McGill Restoration during the 4 days in question was work which fell within the restrictions as he understood them.

■ Jury instructions should be confined to the issues presented by the pleadings and supported by the evidence. *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986). We conclude that in this case, the evidence failed to support the trial court's instruction on assumption of risk to the jury. This doctrine applies only when the danger is known and the risk therefrom is appreciated and voluntarily accepted. See *McDermott v. Platte Cty. Ag. Socy., supra.*

Everts could not be said to have assumed the risk of his injury if he was working within the confines of his restrictions. He had been informed by several doctors and by Bickley herself that he was allowed to work within certain restrictions. Implicit in the restrictions was the assurance that he would not be further injured as long as they were followed. From this, we conclude that Everts could not have knowingly and voluntarily exposed himself to danger. Thus, the trial court erred when it instructed the jury on the affirmative defense of assumption of risk.

■ We next proceed to determine whether the erroneous jury instruction was harmless. Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Fales v. Books*, 253 Neb. 491, 570 N.W.2d 841 (1997). A litigant is entitled to have the jury instructed only upon those theories of the case which are presented by the pleadings and which are supported by competent evidence. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997). It is more than mere probability that an instruction on a matter not an issue in the litigation distracts a jury in its effort to answer legitimate, factual questions raised during the trial. *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996).

158

Submission of an issue on which the evidence is insufficient to sustain an affirmative finding is generally prejudicial and results in a new trial. *Sacco v. Carothers, supra.* We conclude that there was insufficient evidence presented to instruct the jury on assumption of risk and that the instruction was prejudicial to Everts.

Bickley argues that even if the instruction on assumption of risk was erroneous, this case should have been dismissed on a directed verdict, and that the erroneous instruction resulted in no prejudice to Everts. We briefly dispose of this argument on the basis that Bickley did not cross-appeal the denial of her motion for directed verdict. Therefore, we decline to consider this argument.

Because we determine that the erroneous jury instruction requires a new trial, we decline to consider Everts' other assignments of error.

The judgment of the district court is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.