EDWARD VIEREGGER AND BRENDA VIEREGGER, INDIVIDUALLY
AND AS PARENTS AND NEXT FRIENDS OF BLAKE VIEREGGER,
A MINOR, APPELLANTS, V. ANDREW ROBERTSON, M.D.,
AND MICHAEL LEVINE, M.D., APPELLEES.

609 N.W. 2d 409

Filed April 25, 2000.   No. A-99-058.

James E. Harris and Britany S. Shotkoski, of Harris, Feldman Law Offices, for appellants.

James A. Snowden and Fred B. Campbell, Jr., of Wolfe, Snowden, Hurd, Luers & Ahl, for appellees.

SIEVERS and INBODY, Judges, and BUCKLEY, District Judge, Retired.

SIEVERS, Judge.

This case involves a medical malpractice suit filed by Edward Vieregger and Brenda Vieregger, individually and as parents and

next friends of Blake Vieregger, a minor, against Andrew Robertson, M.D., and Michael Levine, M.D., for injuries Blake suffered during his birth. The jury found for Robertson and Levine. In this appeal, the Viereggers assert that several jury instructions were erroneous.

## BACKGROUND

Brenda learned she was pregnant with her second child in February 1992. Brenda suffers from maternal diabetes and was therefore referred to perinatologists Robertson and Levine for the management of her diabetes during her pregnancy, as well as her other obstetrical care and treatment.

Among other complications, maternal diabetes may sometimes cause macrosomatia, a condition where the baby is very large at delivery, weighing over 4,500 grams. This occurs where the mother's blood sugar levels are too high, which causes the unborn baby to produce insulin which acts as a growth hormone. Therefore, monitoring the mother's blood sugar throughout the pregnancy is important. Other risk factors for macrosomatia include maternal obesity at the time of conception, excessive weight gain by the mother during pregnancy, and delivery after the 40th week. Macrosomatia can complicate delivery by contributing to shoulder dystocia, which occurs when the baby's shoulder becomes lodged against the mother's pelvis during delivery.

Because Brenda's glucose levels were above normal, Robertson and Levine instructed Brenda to test her blood sugar level four times a day and to record the results in a logbook in order to monitor her condition. In order to lower Brenda's glucose level, they also adjusted her insulin usage, put her on a 2,200-calorie diet, and referred her to diabetes educational classes. Brenda was fairly consistent about measuring her blood sugars as instructed and brought her logbook for the doctors' review to all of her examinations except one. Brenda's average glucose level was thought to be under good control, and by her 16th week of pregnancy, it was in the normal range. By her 26th week, her level started to drop again, and by her 31st week, her level was described as very good. However, her day-to-day readings from mid-June until the baby's delivery at the end of

September fluctuated, and very high readings occurred every few days. These high readings were very serious and were potentially dangerous for the baby.

Brenda weighed 177 pounds at the time of conception and gained excessive weight during her pregnancy. The evidence revealed that while the average weight gain during pregnancy is 25 pounds, Brenda at one point weighed 228 pounds, a weight gain of more than 50 pounds.

Robertson and Levine performed a series of ultrasounds in order to try to determine the baby's weight. This method is not always accurate, because the measurement is affected by the size of the mother and the fact that all babies are not shaped exactly the same. The baby's estimated fetal weight between the 32d and 37th weeks of gestation was equal to or exceeded the 90th percentile and was considered large for its gestational age. The ultrasound taken a week before the baby's birth indicated that the baby weighed 3,758 grams. Based on this information, Robertson and Levine expected the Vieregger baby to weigh about 4,000 grams at delivery. However, the ultrasound was inaccurate, as Blake weighed 4,590 grams at birth. The Viereggers' expert, Leslie Iffy, M.D., testified that it was his opinion that Brenda's prenatal care did not comply with appropriate standards.

On September 21, 1992, Brenda was admitted to the hospital, and labor was induced with the administration of oxytocin. During labor, the fetal heart rate decelerated on repeated occasions. Iffy testified that the use of oxytocin to induce labor should have been decreased or discontinued, but that in Brenda's case, the amount was increased. He indicated that this was inappropriate and fell below the standard of care.

During delivery, the baby's shoulder became stuck against Brenda's pelvis, which is referred to as "shoulder dystocia." This condition is an obstetrical emergency, which can result in the death of the baby or severe neurological damage. Robertson tried several different methods to deliver the baby. First, he applied lateral traction, or downward pressure, to the side of the baby's head in order to get the shoulder to slip under the pubic bone. When this did not work, Brenda was put in the "McRoberts position," with her knees against her chest, which

also failed. An incision between the vagina and the rectum, an episiotomy, was performed to provide increased room for the baby. This did not work either. Pressure was applied above her pubic bone to try to push the shoulder free. This also failed. At this point, Robertson performed a posterior arm extraction to deliver the baby. At the simplest level of description, he reached in and grabbed an arm and maneuvered it out of the vagina, then rotated the baby out.

Blake suffered bruises and abrasions on the left side of his face and body due to his delivery. Blake also suffered injury to the brachial plexus, a group of nerves which emerge from either side of the spinal column and innervate each arm. This brachial plexus injury has resulted in significant and permanent injury to Blake's right arm.

The Viereggers brought suit against Robertson and Levine, alleging that the two doctors were negligent in treating Brenda during her pregnancy and in delivering Blake. Specifically, the Viereggers asserted that Robertson and Levine failed to effectively maintain Brenda's blood sugars within the acceptable range, failed to prevent the fetal macrosomatia, administered excessive oxytocin, increased the risk of shoulder dystocia, and used excessive force during delivery. Prior to trial, the Viereggers filed a motion in limine to exclude any evidence related to possible contributory negligence on Brenda's part. Robertson and Levine did not plead contributory negligence as a defense, and the Viereggers' motion was sustained by the trial court.

At trial, the Viereggers offered evidence that excessive force was used in the delivery of Blake which fell below the standard of care. Iffy testified that the bruising and abrasions on Blake's face plus the injury to the brachial plexus were evidence that excessive force was used to deliver Blake. Iffy explained that if a doctor pulls the head of a baby with great force in a direction which is away from the shoulder that is stuck, the trunk of the brachial plexus can be pulled from the spine. This is referred to as an "avulsion." Iffy testified that this is "conclusive evidence of brutal force having been used at the time of the delivery."

Robertson and Levine offered evidence that their care of Brenda and delivery of Blake met the standard of care. Their

expert, Thomas Benedetti, M.D., testified that Robertson's delivery of Blake was proper under the circumstances. While he agreed that the brachial plexus injury was caused by shoulder dystocia, he stated that he did not think Robertson "had anything to do with that." Benedetti concluded that both Robertson and Levine complied with the appropriate standards of care in this case.

After receiving various instructions, several of which are at issue and discussed in detail later in our opinion, the jury found in favor of Robertson and Levine. The Viereggers' motion for a new trial was denied, and they have timely appealed.

## ASSIGNMENTS OF ERROR

The Viereggers assert that the district court erred in (1) failing to properly instruct the jury on proximate causation, (2) refusing to properly instruct the jury that the negligence of the parent is not imputed to the child, and (3) instructing the jury on the statutory definition of malpractice.

## STANDARD OF REVIEW

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Everts v. Hardcopf-Bickley*, 257 Neb. 151, 595 N.W.2d 911 (1999); *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998). It is the burden of the complaining party to establish that prejudice has occurred. *Everts v. Hardcopf-Bickley, supra*; *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 530 N.W.2d 230 (1995).

## ANALYSIS

*Proximate Cause Instruction.*

The Viereggers claim that the trial court erred in not properly instructing the jury on proximate cause. The law is well established that all jury instructions must be read together and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating reversal. *Burns v. Metz*, 245 Neb. 428, 513 N.W.2d 505 (1994).

The reading of a jury instruction and not its phraseology is an important consideration, and where the meaning of the instruction is reasonably clear, it is not prejudicially erroneous. *Id.*

The trial court gave the instruction, No. 7, for proximate cause found in NJI2d Civ. 3.41: "A proximate cause is a cause that produces a result in a natural and continuous sequence, and without which the result would not have occurred." In this case, it is important to note that the burden of proof instruction, No. 2, given to the jury phrased the Viereggers' burden concerning proximate cause as follows:

> 1. That the defendant, Andrew Robertson, M.D., was negligent in one or more of the ways claimed by the plaintiffs;
>
> 2. That any such negligence was *the* proximate cause of the plaintiff Blake Vieregger's injury.
>
> . . . .
>
> 1. That the defendant, Michael Levine, M.D., was negligent in one or more of the ways claimed by the plaintiffs;
>
> 2. That any such negligence was *the* proximate cause of the plaintiff Blake Vieregger's injury.

(Emphasis supplied.)

The Viereggers point to recent case law holding that in a medical malpractice action, "proximate causation requires proof necessary to establish that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff." *Doe v. Zedek*, 255 Neb. 963, 970, 587 N.W.2d 885, 891 (1999). See, also, *Reimer v. Surgical Servs. of the Great Plains*, 258 Neb. 671, 605 N.W.2d 777 (2000); *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 651, 605 N.W.2d 782, 791 (2000) (citing *Doe* for proposition that in malpractice action, burden of proof is on plaintiff to demonstrate that "the deviation [from the standard of care] was *the* proximate cause of the plaintiff's alleged injuries"). (Emphasis supplied.) But, *Doe v. Zedek, supra*, clearly teaches that a physician's negligence need only be *a* proximate cause, not *the* proximate cause of the plaintiff's injury. We follow *Doe v. Zedek* rather than the apparently misstated formulation of its holding in *Snyder*.

It is instructive to examine Justice Stephan's separate opinion in *Snyder*, pointing out that the use of the "substantial factor"

test to establish proximate cause is primarily in cases where the acts of negligence of two or more persons combine to produce a single injury, although one of them alone could not have caused the result. Justice Stephan, citing *Reimer v. Surgical Servs. of the Great Plains, supra*, says that the use of the "substantial factor" test for establishing proximate cause is consistent with the fact that the rule was developed for cases in which the application of the "but for" rule of causation would allow each negligent defendant to escape responsibility, because the conduct of one or more others would have been sufficient to produce the same result.

Here we are concerned with the problem of an instruction on the burden of proof of proximate cause potentially allowing a culpable defendant to evade responsibility because there are two defendants and the jury was told that the negligence of each doctor had to be *the* proximate cause. Thus, the jury had to find each doctor to be *the* sole cause, whereas in this situation of multiple defendants, the law requires that the negligence of each doctor only be a "substantial factor." An instruction that the burden of proof is to show that a doctor's negligence was *a* cause is what is required.

Moreover, an instruction imposing a burden of proof of *the* proximate cause creates a very real concern when the factual setting is such that a jury could assign blame for a child's injury to a parent. For example, Brenda's diabetes and weight gain could, under the burden of proof instruction to show *the* proximate cause, result in improper considerations by the jury. For example, in the context of searching for *the* proximate cause, the jury could end up reasoning that Robertson and Levine, even though negligent, were not *the* proximate cause because Brenda's weight gain and diabetes had a causative role in the development of an overly large baby, which led to the need for force in the delivery which caused the avulsion. In short, the trial court used an overly restrictive burden of proof instruction on proximate cause, which prevented the jury from considering whether either Robertson's or Levine's negligent conduct was a substantial factor in causing Blake's injury, and additionally, the jury was potentially allowed to consider Brenda's conduct in the causation equation. See *Smith v. Kellerman*, 4 Neb. App. 178,

541 N.W.2d 59 (1995) (discussing "a" cause versus "the" cause).

We turn to the Viereggers' proposed instruction defining proximate cause, which included the definition from NJI2d Civ. 3.41 given by the court plus the following:

> A proximate cause need not be the sole cause. It may be a substantial factor or substantial contributing cause in bringing about the injury or harm.
>
> If the effects of a Defendant['s] negligence actively and continuously operate to bring about harm to another, the fact that the active negligence of a third person is also a substantial factor in bringing about the harm does not protect the Defendants from liability.

The first sentence of the Viereggers' proposed instruction is an attempt to state what *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999), holds, which is that a physician's negligence need not be the cause—it is enough that the doctor's negligence "caused or contributed" to the injury. This is materially different from the instruction given. While *Doe v. Zedek* was decided after this cause was tried, the notion articulated therein is not new to Nebraska negligence law. See, *Terry v. Duff*, 246 Neb. 524, 530, 519 N.W.2d 550, 554 (1994) (instruction approved in malpractice case against defendant physician in which jury was instructed that doctor's negligence had to be "'the proximate cause or a proximately contributing cause of injury'"); *Maloney v. Kaminski*, 220 Neb. 55, 368 N.W.2d 447 (1985) (when separate and independent acts of negligence by different persons combine to produce single injury, each is liable for damage although one of them alone would not have caused result); *Landmesser v. Ahlberg*, 184 Neb. 182, 187, 166 N.W.2d 124, 128 (1969) ("[s]everal causes acting concurrently may amount to a proximate cause"); *Barry v. Moore*, 172 Neb. 57, 63, 108 N.W.2d 401, 405 (1961) (whether negligence "proximately contributed to cause the accident" was jury question). We conclude the overly restrictive burden of proof instruction coupled with the failure to give an instruction which articulates the rule that a defendant doctor's negligence need only be a proximately contributing cause as articulated by *Doe v. Zedek, supra*, was error.

■ The last sentence of the Viereggers' proposed instruction undoubtedly derives from *Miles v. Box Butte County*, 241 Neb. 588, 489 N.W.2d 829 (1992), also a medical malpractice case. The *Miles* court stated: "[I]f the effects of a defendant's negligence actively and continuously operate to bring about harm to another, the fact that the active negligence of a third person is also a substantial factor in bringing about the harm does not protect the defendant from liability." *Id.* at 604-05, 489 N.W.2d at 841, citing *London v. Stewart*, 221 Neb. 265, 376 N.W.2d 553 (1985).

In the instant case, the trial court gave instruction No. 18, which provided:

> Where the independent negligent acts or failures to act of more than one person combine to proximately cause the same injury, each such act or failure to act is a proximate cause, and each such person may be held responsible for the entire injury. This is true though some may have been more negligent than others.

This instruction is nearly identical to the second paragraph of the Viereggers' proposed instruction, as quoted above. Therefore, the omission of the *Miles* instruction requested by the Viereggers was remedied by instruction No. 18, which is substantially similar to that requested.

■ Finally, we determine whether the erroneous jury instruction concerning proximate cause was reversible error. Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Fales v. Books*, 253 Neb. 491, 570 N.W.2d 841 (1997). The language of the burden of proof instruction and the proximate cause instruction would cause the jury to view the Viereggers' burden of proof as to the negligence of Robertson and Levine incorrectly, plus the instructions wrongfully enhanced the burden of proof of the Viereggers. In short, it is a different case if a jury is told that "this doctor's negligence must have been *the* cause of the baby's injury" than if told "this doctor's negligence must have caused or contributed to the baby's injury." This is particularly so when there is evidence to suggest that a combination of causative factors may have been at work in the baby's injury.

*Lack of Imputed Negligence Instruction.*

The Viereggers next assert that the trial court should have instructed the jury that the negligence or acts or omissions of the parents cannot be imputed to the child. The defense of contributory negligence was not asserted by Robertson and Levine, and before the trial, the court sustained the Viereggers' motion in limine to exclude evidence regarding any negligence on the part of Brenda. However, evidence was introduced at trial regarding Brenda and things which she did or did not do which had a causative role in the baby's condition immediately before birth. Such evidence was necessarily admitted for other reasons, for example, to establish the medical conditions that Robertson and Levine were treating and the risks posed to the baby. The evidence was not offered to intentionally blame Brenda for Blake's injury. Examples of such evidence include references to Brenda's weight (a risk factor for macrosomatia) and testimony regarding her consistency in testing her blood sugar at home. We believe that it is readily apparent that in this factual setting, some jurors may well have trouble finely differentiating between the mother's actions or inactions which admittedly impact the fetus and how the doctors were duty bound under the applicable standard of care to properly handle the mother's pre-delivery care and the child's birth process. The jury must differentiate during its consideration of proximate cause. The mother's weight and diabetes has a natural tendency to become connected with the baby's injury in the minds of some jurors, even though the defense has not even made such a contention. The cautionary instruction sought would guard against a decision on an improper basis and could not have been harmful to the defense which did not assert contributory negligence. Even though contributory negligence was not raised as a defense, the evidence was such that Brenda's conduct was prominent enough in the evidence that the jury could easily become distracted from its effort to answer the real question presented by this case, which was whether Robertson and Levine were negligent and whether any such negligence proximately caused Blake's injury. The requested jury instruction should have been given, and its absence adversely affected the substantial rights of Blake.

*Definition of Statutory Malpractice Instruction.*

The Viereggers agree that the trial court instructed the jury on the duty of a health care provider based upon NJI2d Civ. 12.01; however, they assert that the court should not have instructed the jury on the statutory definition of malpractice contained in the Nebraska Hospital-Medical Liability Act, codified at Neb. Rev. Stat. § 44-2810 (Reissue 1998). They argue that instruction No. 6 was redundant and confusing to the jury.

The jury was given instruction No. 5, which is from NJI2d Civ. 12.01: "A physician has the duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other physicians engaged in a similar practice in the same or similar localities." The court also gave the statutory definition of malpractice (or professional negligence) in instruction No. 6, which stated:

> This is an action based upon a claim of malpractice, sometimes called professional negligence. A definition of professional negligence is:
>
> Malpractice or professional negligence shall mean that, in rendering professional services, a health care provider has failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities. In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of a health care provider in a particular community, the test shall be that which health care providers, in the same community or in similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances.

In *Burns v. Metz*, 245 Neb. 428, 513 N.W.2d 505 (1994), the Nebraska Supreme Court specifically addressed what instruction should be given to the jury in this situation and disapproved of giving an additional instruction with NJI2d Civ. 12.01. The court stated:

> The Nebraska Jury Instruction does not use the phrase "reasonable care," as does the definition provided in § 44-2810. However, as noted in NJI2d Civ. 12.01 com-

ment at 688, "'the care, skill, and knowledge ordinarily possessed and used under like circumstances by other [such health care providers] engaged in a similar practice in the same or similar localities' *will* be reasonable care." (Emphasis supplied.) Thus, the definition of "reasonable care" is inherent in the Nebraska Jury Instruction, and an additional instruction relating negligence to the absence of reasonable care would be redundant and possibly confusing to the jury.

*Id.* at 432, 513 N.W.2d at 508.

Thus, giving an additional instruction on the statutory definition of malpractice, or professional negligence, was erroneous. NJI2d Civ. 12.01 was the proper instruction, and adding the instruction with the statutory definition was repetitive and could have caused the jury confusion or misled it in its deliberation of this case. *Burns v. Metz, supra*, has resolved this issue. On remand, the NJI2d Civ. 12.01 instruction is the one to be given.

## CONCLUSION

The requirement for the plaintiff's burden of proof on proximate causation set forth in *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000), and *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999), was not reflected in the instructions given to the jury. The proximate cause instruction, together with the burden of proof instruction, made the Viereggers' burden of proof greater than the law requires. The trial court should have instructed the jury as requested by the Viereggers in the second sentence of their proposed jury instruction regarding proximate cause, in addition to the standard instruction. Given the evidence adduced at trial, the Viereggers' proposed instruction regarding imputed negligence of the parents should have been given as a protective measure. Furthermore, the trial court erred in giving jury instruction No. 6, containing the statutory definition of malpractice. For these reasons, we reverse the verdict and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.