Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/29/2025 09:07 AM CDT

- 755 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

Cynthia L. Lear, individually and as Personal
Representative of the Estate of Joshua W. Lear,
deceased, appellant and cross-appellee, v.
Nebraska Methodist Health System, Inc.,
doing business as Methodist Health System,
et al., appellees and cross-appellants.

___ N.W.3d ___

Filed July 22, 2025.    No. A-24-309.

1. **Jury Instructions.** Whether a jury instruction is correct is a question
   of law.
2. **Judgments: Appeal and Error.** When reviewing questions of law, an
   appellate court has an obligation to resolve the questions independently
   of the conclusion reached by the trial court.
3. **Jury Instructions: Appeal and Error.** Where jury instructions are
   claimed deficient on appeal and such issue was not raised at trial, an
   appellate court reviews for plain error.
4. **Appeal and Error: Words and Phrases.** Plain error exists where there
   is an error, plainly evident from the record but not complained of at
   trial, which prejudicially affects a substantial right of a litigant and is of
   such a nature that to leave it uncorrected would cause a miscarriage of
   justice or result in damage to the integrity, reputation, and fairness of the
   judicial process.
5. **Jury Instructions: Proof: Appeal and Error.** To establish reversible
   error from a court's failure to give a requested jury instruction, an appel-
   lant has the burden to show that (1) the tendered instruction is a correct
   statement of the law, (2) the tendered instruction was warranted by the
   evidence, and (3) the appellant was prejudiced by the court's failure to
   give the requested instruction.
6. **Jury Instructions.** The submission of proposed instructions by counsel
   does not relieve the parties in an instruction conference from calling the
   court's attention by objection to any perceived omission or misstatement
   in the instructions given by the court.

- 756 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

7. **Jury Instructions: Appeal and Error.** If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal.

8. \_\_\_\_: \_\_\_\_. Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party.

9. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

10. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

Joseph P. Cullan, Patrick J. Cullan, and Joseph S. Fox, of Cullan & Cullan, L.L.C., for appellant.

Julie R. Lehan and Robert M. Schartz, of Abrahams, Kaslow & Cassman, L.L.P., for appellees Nebraska Methodist Health System, Inc., and The Nebraska Methodist Hospital.

Robert A. Mooney and Emily E. Palmiscno, of Mooney, Lenaghan, & Westberg Dorn, L.L.C., for appellees Omaha Thoracic & Cardiovascular Surgery, P.C., and John T. Batter, M.D.

RIEDMANN, Chief Judge, and MOORE and ARTERBURN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Cynthia L. Lear (Lear), individually and as personal representative of the estate of Joshua W. Lear, deceased, appeals from the order of the district court entering judgment on the jury verdict in favor of the health care providers she sued. Appellees Nebraska Methodist Health System, Inc.,

- 757 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

doing business as Methodist Health System (NMHS), and The Nebraska Methodist Hospital (TNMH) have cross-appealed. Appellees Omaha Thoracic & Cardiovascular Surgery, P.C. (OTCS), and John T. Batter, M.D., have also cross-appealed. For ease of reference throughout this opinion, we will refer to NMHS and TNMH collectively as the "Methodist defendants" and will use their individual names only when necessary. We will likewise refer to OTCS and Batter collectively as the "Batter defendants." Because we reject Lear's assigned errors, we do not address the errors assigned in the cross-appeals.

## II. BACKGROUND

On March 13, 2017, Joshua W. Lear (Joshua) underwent a lobectomy, in which the lower portion of his left lung was removed. Batter, employed by OTCS, was the surgeon who performed the operation at TNMH. After experiencing postsurgical issues, Joshua died later that day. Lear filed suit against NMHS, TNMH, OTCS, and Batter. Several fact and expert witnesses testified at trial, and hundreds of pages of documents were entered into evidence. We recount only that evidence which is necessary to resolve the assigned errors on appeal.

### 1. Underlying Facts

Joshua Smith, M.D., was the anesthesiologist who provided care for Joshua during the surgery. Smith was not an employee of the hospital. Smith attempted to place an arterial line prior to surgery to monitor Joshua's vital signs, but after several failed attempts, Smith made the decision to use alternate means to monitor them. The surgery was performed without complications, and at 4:01 p.m., Joshua was taken to the postanesthesia care unit (PACU). The PACU is a recovery room where patients who have been fully anesthetized are closely monitored before being transferred to a hospital floor room. Smith accompanied Joshua to the PACU, and a PACU nurse, Jill Sheffield, began providing care for Joshua.

Sheffield took Joshua's vital signs at 4:01 p.m., 4:05 p.m., 4:15 p.m., 4:30 p.m., and 4:45 p.m. Batter had standing orders

- 758 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

to notify him if a patient's systolic blood pressure dropped below 100, and Joshua's systolic blood pressure dropped to 96 at 4:05 p.m. and 98 at 4:45 p.m. A different nurse took Joshua's vital signs at 4:40 p.m., and his systolic blood pressure was 99 at that time. However, Sheffield did not alert Batter to these readings.

At 4:29 p.m., Smith was at Joshua's bedside and determined Joshua was hemodynamically stable. At 4:41 p.m., Sheffield documented that Smith was "okay" with Joshua's being transferred from the PACU to the ninth floor. During his stay in the PACU, Joshua had an output of "165 ccs" of sanguineous fluid into his chest tube reservoir. He had a small amount of air in his chest cavity, also known as a pneumothorax, and a small air leak in his chest tube. Sheffield did not advise Smith of the amount of sanguineous fluid in the chest tube reservoir, the pneumothorax, or the chest tube air leak. Sheffield notified Batter of the pneumothorax, which did not cause Batter any concerns, but she did not tell him about the 165 ccs of sanguineous fluid in the chest tube reservoir. Joshua was documented as ready to leave the PACU at 4:45 p.m. and was officially discharged to the ninth floor at 5 p.m. At that point, the ninth floor nurse took over Joshua's care.

Around 5:04 p.m., Joshua leaned forward, exhaled, appeared pale and ashen, and did not respond to verbal or painful stimuli. Joshua lost consciousness and CPR was initiated. He was taken back to the operating room, and Batter performed surgery to resuscitate Joshua. These attempts were unsuccessful, and Joshua died. An autopsy revealed that Joshua had a 2-mm tear in his pulmonary artery, approximately 4 mm above the point where Batter had secured the artery after the lobectomy. The cause of death was acute hemorrhagic shock as a complication from the lobectomy.

## 2. Expert Testimony

Mitchell J. Magee, M.D., a thoracic surgeon from Texas, opined that Batter violated the standard of care by failing to

- 759 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

adequately secure the pulmonary artery during the surgery, by failing to inspect the pulmonary artery or surgical field prior to closure, and by not having an arterial line in place. Although Magee acknowledged the placement of an arterial line was a decision made between the anesthesiologist and the surgeon, he believed the surgeon was ultimately "responsible for everything that happens in the operating room."

Magee opined that nursing staff in the PACU failed to follow Batter's orders and that if they had followed his orders, then Batter would have had the opportunity to reassess Joshua and Joshua would have been under closer observation. He also stated that nursing staff should have notified Batter about Joshua's chest tube drainage. Magee acknowledged that Smith ultimately discharged Joshua from the PACU, but Magee believed Smith was evaluating from the perspective of an anesthesiologist, and there would be additional things that Magee would assess as a surgeon.

Richard Novak, M.D., an anesthesiologist at Stanford University Hospital, opined that Joshua was discharged from the PACU "too soon," in violation of the standard of care. He stated there were significant abnormalities that Sheffield did not disclose to the physicians involved, including the times Joshua's systolic blood pressure fell below 100 and the amount of fluid discharge in the chest tube reservoir. Novak believed this allowed Joshua's PACU discharge to occur too quickly. Additionally, Novak testified that the guidelines contained in one of the hospital policies on patient discharge that he reviewed violated the standard of care because the policy allowed discharge from the PACU with vital signs that Novak considered abnormal.

Shay R. Glevy, a PACU nurse in California, opined that Sheffield violated the standard of care by not informing Batter, pursuant to his orders, of the times Joshua's systolic blood pressure fell below 100. She believed Sheffield failed to communicate by not informing Batter and Smith of the 165 ccs of sanguineous fluid in Joshua's chest tube reservoir. Glevy

- 760 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

stated that the 4:45 p.m. vital signs were not stable and that Sheffield should have kept Joshua in the PACU until there were 30 minutes of stable vital signs. Glevy opined that Joshua was discharged from the PACU "too fast."

The defendants introduced expert testimony showing that neither the Methodist defendants nor the Batter defendants breached the applicable standards of care. An expert cardio-thoracic surgeon from the Buffett Cancer Center, which is part of the University of Nebraska Medical Center and Nebraska Medicine, opined that Batter did not breach the standard of care when performing the lobectomy, including proceeding without an arterial line. This expert opined that there was no bleeding from the 2-mm tear in the pulmonary artery until shortly before 5:04 p.m., as the pulmonary artery would bleed so profusely from such a tear that Joshua would have lost liters of blood from the tear within minutes. Magee confirmed that bleeding was a known complication of a left lower lobe lobectomy and that complications could occur even with the best of medical care. Batter agreed. Smith likewise agreed that following a surgery like this, there can be postoperative bleeding in the chest.

An expert PACU nurse employed at Nebraska Medicine, who was also certified in perianesthesia nursing, opined that Sheffield met the standard of care when caring for Joshua in the PACU. She did not believe Sheffield breached the standard of care in failing to inform Batter when Joshua's systolic blood pressure was below 100, as Joshua's other vital signs were not concerning. This nurse did not think the amount of fluid in Joshua's chest tube reservoir was significant after this type of surgery.

### 3. Jury Instructions

At the jury instruction conference, the district court overruled Lear's request to include institutional negligence claims against the Methodist defendants for not having proper policies in place. It declined to give Lear's proposed instruction defining proximate cause. The district court overruled Lear's

- 761 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

objection to an instruction stating that as a matter of law, Smith was not an employee or agent of the Methodist defendants, and also overruled Lear's objections to the instruction defining negligence.

The jury was instructed that Lear was claiming the Methodist defendants were professionally negligent in failing to follow Batter's orders, failing to communicate the 165 ccs of sanguineous fluid, and transferring Joshua from the PACU to the ninth floor too quickly. The jury was instructed Lear was claiming the Batter defendants were professionally negligent in failing to secure the pulmonary artery prior to closure, failing to inspect the pulmonary artery prior to closure, and failing to take time to place an arterial line. The jury found that Lear failed to meet her burden of proof as to both the Methodist defendants and the Batter defendants on all claims and returned a verdict in favor of the defendants. Lear appeals. We discuss additional facts below as necessary.

## III. ASSIGNMENTS OF ERROR

Lear assigns, restated, that the district court erred in (1) failing to instruct the jury on (a) institutional negligence, (b) allocation of negligence, and (c) proximate and concurrent cause, and (2) instructing the jury (a) that Smith was not an agent of the Methodist defendants, (b) using the statutory definition of negligence, and (c) that NMHS and TNMH were to be considered as one defendant.

On cross-appeal, the Methodist defendants assign that the district court abused its discretion in failing to (1) exclude Novak's testimony that was based solely on his personal practices and (2) exclude Glevy as an expert witness or, alternatively, exclude certain testimony that was based solely on her personal practices.

On cross-appeal, the Batter defendants assign, restated, that the district court erred in (1) receiving Magee's affidavit in opposition to Batter's pretrial motion to strike, despite Batter's objections, and (2) admitting Magee's testimony at trial.

- 762 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

## IV. STANDARD OF REVIEW

[1,2] Whether a jury instruction is correct is a question of law. *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, 905 N.W.2d 247 (2018). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

[3] Where jury instructions are claimed deficient on appeal and such issue was not raised at trial, an appellate court reviews for plain error. *Foundation One Bank v. Svoboda*, 303 Neb. 624, 931 N.W.2d 431 (2019).

[4] Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*

## V. ANALYSIS

### 1. Appeal

#### (a) Failure to Instruct

[5] Lear's first three assigned errors all relate to the district court's refusal to give her proposed instructions. To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *Rodriguez, supra.* However, if the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal. *Id.*

#### (i) Institutional Negligence

Lear assigns that the district court erred by failing to instruct the jury on institutional negligence. She argues that

- 763 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

she asserted a claim of institutional negligence regarding the hospital's policy on the care and discharge of a postsurgical patient and that Novak's opinion supported this. We find that this instruction was not warranted by the evidence and that Lear cannot show prejudice from the district court's refusal to instruct the jury on the institutional negligence claim.

### a. Additional Facts

Novak testified that the hospital policy addressing the care and discharge of a postsurgical patient was poorly written, flawed, and below the standard of care. Specifically, he noted the policy allowed for the PACU discharge of a patient with a heart rate between 50 and 120, but a heart rate under 60 would be abnormal for most patients, as would a heart rate over 100. The policy allowed for the discharge of a patient with a systolic blood pressure between 90 and 180, but Novak believed a systolic blood pressure of 180 was extremely high and a patient with that reading should not be discharged from a recovery unit. Novak also noted that the policy allowed patients to be discharged with respiratory rates as high as 30.

Novak confirmed that one of the aspects of the policy is that "it's supposed to show stability within the parameters and that's a foremost of recovery room discharge." He opined that there should be at least 30 minutes of stability of vital signs prior to discharge and that Joshua's vitals were not stable. At the jury instruction conference, Lear requested that the court include in the statement of the case instruction an additional claim that the Methodist defendants "[f]ail[ed] to have an appropriate policy in place for the safe discharge from the PACU." Lear argued that Novak stated the hospital and health system failed to have appropriate policies in place, and the jury instruction proposed by the district court did not include those institutional claims. The district court refused the request to include an institutional claim in the jury instructions.

- 764 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

### b. Analysis

Lear argues that Novak testified that the policy was poorly written, that it did not meet the standard of care, and that as a direct and proximate result, Joshua died. However, Novak identified three deficiencies in the policy involving heart rate, systolic blood pressure, and respiratory rate. Joshua's vital signs from the time he entered the PACU until his discharge never entered the range of numbers that Novak specifically identified as being problematic in the policy.

Novak stated that the policy was flawed because it allowed a patient to be discharged with a heart rate under 60 or over 100. Joshua's heart rate was never under 60 or over 100 at any time in the PACU. Joshua's heart rate did reach 98 at 4:55 p.m., but it never went over 100, the rate that Novak identified as abnormal. Novak also opined that the policy erroneously allowed for a patient with a systolic blood pressure up to 180 to be discharged, but Joshua's systolic blood pressure never elevated above 131 while in the PACU. Similarly, while Novak believed the policy was flawed for allowing discharge of patients with respiratory rates as high as 30, Joshua's respiratory rate was never above 21.

Although Novak opined that the PACU discharge policy was below the standard of care, the portions he specifically identified as being below the standard were never reached in this case. Joshua's vital signs never entered the specific suboptimal ranges identified by Novak that led him to opine that the policy fell below the standard of care. Thus, even if we assume the policy as written was below the standard of care, the specific parameters that made it so were never at issue in this case and could not have been a proximate cause of Joshua's death.

At oral argument, Lear argued that Novak's testimony also included a criticism of the policy in that it did not require the patient's vital signs to remain stable for the requisite amount of time. We do not interpret his testimony in this manner. Rather, after identifying the three deficiencies set forth above,

- 765 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

Novak was asked, "[I]s one of the elements of the policy to ensure that — I think it's letter 'F' — to ensure that there's stability of the patient, though, prior to discharge?" Novak responded, "One of the aspects of this policy is that it's supposed to show stability within the parameters and that's a foremost of recovery room discharge." He then went on to opine that 30 minutes of stability or longer is appropriate, depending upon the complexity of the surgery.

Our review of the policy reveals that section "3(h)" does require that the patient "[s]how stability within these parameters" as testified to by Novak. However, Novak never opined that the policy was deficient for failing to include a time period. To the contrary, he testified that 30 minutes of stability is preferred and that he read depositions from the nurses in this case, who were taught 30 minutes of stability as well. Therefore, we reject Lear's argument that Novak opined the policy was deficient as it related to a patient's stability.

Lear has failed to show her proposed instruction was warranted by the evidence and thus has failed to show she was prejudiced by the district court's refusal to give this requested instruction. This assignment of error fails.

### (ii) Allocation of Negligence

Lear assigns that the district court erred in failing to instruct the jury on the effects of the allocation of negligence. We determine that no such instruction was warranted.

### a. Additional Facts

An allocation of negligence instruction was included in Lear's proposed jury instructions filed with the district court and was included in a packet of proposed instructions received into evidence at the conclusion of the jury instruction conference. It stated, "If you find Plaintiffs were damaged then you must determine to what extent the negligent conduct of each Defendant contributed to the damages of Plaintiffs, expressed as a percentage of one hundred percent (100%)."

- 766 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

### b. Analysis

[6] Despite the proposed instruction being included in a packet of instructions offered into evidence at the conclusion of the jury instruction conference, at no time during the conference did Lear ever bring her requested instruction to the district court's attention. The submission of proposed instructions by counsel does not relieve the parties in an instruction conference from calling the court's attention by objection to any perceived omission or misstatement in the instructions given by the court. *Farmers Mut. Ins. Co. v. Kment*, 265 Neb. 655, 658 N.W.2d 662 (2003) (concluding counsel's failure to object at instruction conference precluded review despite proposed instruction having been provided to court). The purpose of the instruction conference is to give the trial court an opportunity to correct any errors being made by it. *Id*. Consequently, the parties should object to any errors of commission or omission. *Id*.

While we question whether Lear has adequately preserved this assigned error, our review of her argument leads us to conclude that an apportionment instruction was not warranted by the evidence, nor can Lear show prejudice from the court's failure to provide her proposed instruction. On appeal, Lear argues that pursuant to Neb. Rev. Stat. § 25-21,185.07 (Reissue 2016), Nebraska's comparative fault statute, the jury should have been instructed on the effects of the allocation of negligence because it was a cause of action to which contributory negligence may be an affirmative defense. Neb. Rev. Stat. § 25-21,185.09 (Reissue 2016) provides that the contributory negligence of the claimant shall diminish proportionately the amount awarded to him or her, except that if the claimant's contributory negligence is equal to or greater than the total negligence of the persons against whom recovery is sought, "the claimant shall be totally barred from recovery. The jury shall be instructed on the effects of the allocation of negligence."

- 767 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

We recognize that the Nebraska Supreme Court has previously held that in a case where contributory negligence is a defense, the failure of a court to properly instruct the jury pursuant to § 25-21,185.09 is prejudicial error. See *Wheeler v. Bagley*, 254 Neb. 232, 575 N.W.2d 616 (1998). Here, however, based on the facts of this case, no allocation of negligence instruction was required.

In *Wheeler*, the Supreme Court, when discussing § 25-21,185.09, stated that "[t]he statute, which was enacted as part of the comparative negligence statutory scheme in 1992, mandates that juries that have been instructed on contributory negligence as a defense must also be instructed on the ultimate effect of their allocation of negligence to each party." 254 Neb. at 237, 575 N.W.2d at 619. In *Ammon v. Nagengast*, 24 Neb. App. 632, 642, 895 N.W.2d 729, 737 (2017), we noted that § 25-21,185.09 dictated the effect that a claimant's contributory negligence had on the claimant's recovery, but that "[t]here was no allegation of any contributory negligence chargeable to [the decedent], so § 25-21,185.09 is not applicable to this case." Here, there was no allegation that there was any contributory negligence on Joshua's part, so § 25-21,185.09 is inapplicable in this case.

We further note that Lear's proposed allocation of negligence instruction states that if the jury finds Lear was damaged, it must determine the extent the negligent conduct of each defendant contributed to the damage, expressed as a percentage of 100 percent. Nowhere in this proposed instruction does it inform the jury to apportion negligence to anyone other than the defendants; hence, giving Lear's proposed instruction would not have had any effect on her recovery. The district court did not err in failing to give Lear's apportionment of negligence instruction.

#### (iii) Proximate and Concurrent Cause

Lear assigns that the district court erred in failing to properly instruct the jury on proximate cause and concurrent cause. We determine that the instructions, taken as a whole, correctly

- 768 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

stated the law, were not misleading, and adequately covered the issue of proximate cause.

### a. Additional Facts

The proximate cause instruction given by the district court instructed the jury that "[a] proximate cause is a cause that produces a result in a natural and continuous sequence, and without which the result would not have occurred." Lear proposed a proximate cause instruction that included the district court's definition, but also added the following language:

> A proximate cause need not be the sole cause. It may be a substantial factor or substantial contributing cause in bringing about the injury or harm.
>
> If the effects of a defendant's negligence actively and continuously operate to bring about harm to another, the fact that the actions/omissions of a third person is also a substantial factor in bringing about the harm does not protect the defendant from liability.

Lear's proposed instruction on concurrent cause stated:

> Where the independent negligent acts or failures to act of more than one person combine to proximately cause the same injury, each such act or failure to act is a proximate cause and each such person may be held responsible for the entire injury. This is true though some may have been more negligent than others.

### b. Analysis

Lear argues that absent these instructions, the jury could believe that any actions by Smith that caused or contributed to Joshua's death exonerated the defendants from liability. However, this would require the jury to disregard the instruction on proximate cause, which defined it as a "cause" and did not limit it to a single cause. To the extent Lear is arguing the jury could have believed there could be only one proximate cause, the jury instructions and verdict forms illustrate the fallacy of Lear's argument.

- 769 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

The jury was instructed in the statement of the case instruction that it could find that Lear met her burden of proof as to either or both defendants. It was further instructed that the four defendants were divided into two groups and that those "two groups of defendants are independent of each other." It was advised to "decide the case of each group of defendants separately as if it were a separate lawsuit." Verdict form No. 4 allowed the jury to find against both defendant groups and required it to apportion each group's percentage of negligence.

[7] Although these instructions and verdict form dealt solely with the named defendants, they reveal that the jury was well aware that there could be more than one proximate cause and that it was up to it to determine each party's percentage of negligence. An instruction specifically stating that a proximate cause need not be the sole cause or that persons whose combined negligent acts are each proximate causes was unnecessary. If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal. *de Vries v. L & L Custom Builders*, 310 Neb. 543, 968 N.W.2d 64 (2021).

Furthermore, there is nothing in our record that would support a determination that a jury would conclude that Smith's actions, if a proximate cause of Joshua's death, would preclude a determination that the named defendants could also be a proximate cause. Our review of the record does not reveal that any party suggested that Smith's actions *contributed or combined with* any negligence of the defendants to cause Joshua's death. To the contrary, Lear did not assert any negligence on the part of Smith and admits on appeal that the evidence she presented "was that Defendants' negligence was the sole cause of Plaintiff's injuries." Brief for appellant at 26. Both the Methodist defendants and the Batter defendants

- 770 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

adduced evidence that they did not violate the standard of care; therefore, they argued they were not a proximate cause of Joshua's death.

Lear argues that "without the additional instructions proposed by Plaintiff, members of the jury could logically infer that Defendants were entirely shielded by the evidence presented by Defendants that . . . Smith was the sole proximate cause of Plaintiff's injuries." Brief for appellant at 27-28. But if the jury determined Smith was the sole proximate cause, then neither the Methodist defendants nor the Batter defendants could be "a" proximate cause. This is true regardless of whether Lear's proposed instructions were given.

When read as a whole, the jury was properly instructed that one or both of the defendants could be a proximate cause of Joshua's death and that proximate cause was defined as "a cause that produces a result in a natural and continuous sequence, and without which the result would not have occurred." Lear cannot show she was prejudiced by the failure to give her requested instructions and cannot establish prejudicial error requiring reversal. See *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, 905 N.W.2d 247 (2018). This assignment of error fails.

### (b) Failure to Properly Instruct

[8,9] Lear's next three assigned errors all contend that the district court erred in giving certain instructions to the jury. Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *de Vries, supra*. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Id*.

### (i) Smith Not Agent of Methodist Defendants

Lear assigns that the district court erred by instructing the jury that Smith was not an agent of the Methodist defendants.

- 771 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

She argues that Smith never indicated he was not an agent of the defendants in 2017. We determine that given the evidence presented, Lear was not prejudiced by the instruction.

### a. Additional Facts

At the jury instruction conference, the district court stated that it tried "to anticipate jury problems and issues" if it could and that it thought, as a matter of law, that Smith was not an employee of Methodist. Lear objected, arguing that when there is a dispute of fact regarding the relationship of the parties involved, it is error for the court to instruct on that relationship as a matter of law. The jury was subsequently instructed that, as a matter of law, Smith was not an agent or employee of the Methodist defendants. It was also instructed that to meet her burden of proof, Lear needed to establish that there was a breach of the standard of care and that this breach was a proximate cause of Joshua's injuries or death. The jury was also instructed that the standard of care needed to be established by expert testimony.

### b. Analysis

Although Lear argues that the court erred in instructing the jury that Smith was not an employee of Methodist, she assigns error only to the portion of the instruction that stated Smith was not an agent of the Methodist defendants; thus, we limit our analysis to this portion of the instruction. We find that Lear cannot establish the instruction at issue was prejudicial.

To impose liability upon the Methodist defendants based upon acts of Smith as its agent, Lear would be required to prove that Smith breached the standard of care. We therefore need not determine whether the court erred in its determination that Smith was not an agent of the Methodist defendants because there was no expert witness testimony establishing the standard of care as it related to Smith, nor was there testimony that he breached it.

Magee was a thoracic surgeon and testified that he "[was] not going to opine on an anesthesiologist." Novak, who was

- 772 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

retained by Lear as an expert witness in anesthesiology, testi-fied regarding Smith as follows:

> The anesthesiologist's job is to do the preanesthetic care — which he did — and do the anesthetic care in the operating room, which he did — he met the standard of care — and then bring this patient to the recovery room at which point in time the standard of care is for him to transmit everything he knows that's pertinent to that nurse so she can continue the care while he goes back to do the next anesthetic. And that's really the heart of the matter is that she's there watching the vital signs and charting the information, and he is not there.
>
> It is not an anesthesiologist's job to be physically pres-ent in the recovery room.

Although Novak opined that Joshua was discharged "too fast from the PACU," he faulted the PACU nurse, Sheffield, for failing to report what Novak considered abnormalities in Joshua's condition, emphasizing that "Sheffield is on her own. She is to be the eyes and ears for the anesthesiologist in terms of his orders. . . . And unless she reports the abnormali-ties, they may not ever find out about them." Novak never opined that Smith violated the standard of care.

Lear's remaining expert, Glevy, was a perianesthesia nurse and PACU nurse. As a nurse, Glevy was prohibited from opin-ing on the standard of care of an anesthesiologist. See Neb. Rev. Stat. § 44-2810 (Reissue 2021) (identifying standard of care as being reasonable care that health care providers, in same or similar community and engaged in same or similar line of work, would provide). Absent expert testimony that Smith violated the standard of care for an anesthesiologist, Lear cannot show she was prejudiced by the district court's instruction determining as a matter of law that Smith was not an agent of Methodist. Even if the jury had not been so instructed, the Methodist defendants could not be held liable for the acts of an agent physician without expert testimony that the physician violated the standard of care. Because Lear was

- 773 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

not prejudiced, this assigned error fails. See *de Vries v. L & L Custom Builders*, 310 Neb. 543, 968 N.W.2d 64 (2021).

## (ii) Statutory Definition of Negligence

Lear assigns that the district court erred in instructing the jury using the statutory definition of negligence. We find the instruction as given was neither confusing nor misleading.

### a. Additional Facts

The district court instructed the jury using both the pattern jury instruction for the duty of a health care provider, NJI2d Civ. 12.01, and the statutory definition of malpractice, § 44-2810. The district court combined the definitions so that the jury received only one instruction on the definition of malpractice. The instruction stated:

> This is an action based on a claim of malpractice, sometimes called professional negligence. Nebraska's Medical-Professional [L]iability Act provides:
>
> "Malpractice or professional negligence shall mean that, in rendering professional services, a health care provider has failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities. In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of a health care provider in a particular community, the test shall be that which health care providers, in the same community or in similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances."
>
> Therefore, a health care provider such as a physician or hospital has the duty to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers such as a physician or hospital engaged in a similar practice in the same or similar communities.

- 774 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

We are here concerned with highly specialized fields with which laymen cannot be expected to be familiar. Accordingly, the standard of care of the required skill and knowledge to be exercised must necessarily be established by expert witnesses who are learned in the field of medicine. You must not, therefore, arbitrarily set your own standards, but you should determine the standard of care or required skill and knowledge from the testimony of the expert witnesses who testified in this case.

### b. Analysis

Lear contends that the first paragraph, the statutory definition, was redundant and confusing to the jury and should not have been given. In support of her argument, Lear cites this court's opinion in *Vieregger v. Robertson*, 9 Neb. App. 193, 609 N.W.2d 409 (2000). We find *Vieregger* distinguishable from the present case.

In *Vieregger, supra*, the district court provided two instructions to the jury regarding the duty of a health care provider and the definition of malpractice, one taken from NJI2d Civ. 12.01 and one taken from § 44-2810. We noted that the Supreme Court had addressed the instructions to be given in this situation and had disapproved of giving an additional instruction along with NJI2d Civ. 12.01. *Vieregger, supra*, citing *Burns v. Metz*, 245 Neb. 428, 513 N.W.2d 505 (1994). Our concern in *Vieregger* was that "adding the instruction with the statutory definition was repetitive and could have caused the jury confusion or misled it." 9 Neb. App. at 204, 609 N.W.2d at 417. That concern is not present in this case based on the manner in which the district court chose to provide the statutory definition of malpractice to the jury.

Here, the district court did not provide two separate instructions with two separate definitions. Rather, it provided the jury with one instruction, integrating the pattern jury instruction into the statutory definition of malpractice. It first set forth the statutory definition of malpractice or professional

- 775 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

negligence, and then, through the use of the word "therefore," provided the pattern jury instruction, explaining how a health care provider meets his or her duty.

Thus, the concern about confusing the jury that guided our decision in *Vieregger, supra*, is not present here. We find that the district court did not commit reversible error in defining malpractice for the jury. The jury instructions correctly stated the law, were not misleading, and adequately covered the definition of professional negligence. See *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, 905 N.W.2d 247 (2018). Lear has failed to show prejudicial error warranting reversal. This assignment of error fails.

### (iii) Methodist Defendants

Lear assigns that the district court erred in instructing the jury that NMHS and TNMH were to be grouped as one defendant. The jury instruction at issue provided in part that NMHS and TNMH had the same interests in the case and that if it found in favor of one, it must find in favor of both, and if it found against one, it must find against both. Lear argues this instruction was not a correct statement of law, especially when considering the allegations of institutional negligence that were presented at trial but not submitted to the jury.

However, Lear failed to object to this jury instruction. She failed to preserve this issue, and we review for plain error. See *Foundation One Bank v. Svoboda*, 303 Neb. 624, 931 N.W.2d 431 (2019). As discussed above, we reject Lear's claim that the district court erred in failing to instruct the jury on the institutional claim relating to the hospital policy, which is the basis for her argument that grouping the Methodist defendants together was in error. Having reviewed the instruction at issue, we find no plain error. This assignment of error fails.

### 2. Methodist Defendants' Cross-Appeal

[10] The Methodist defendants have filed a cross-appeal, assigning that the district court abused its discretion in failing to (1) exclude Novak's testimony that was based solely

- 776 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
LEAR v. NEBRASKA METHODIST HEALTH SYS.
Cite as 33 Neb. App. 755

on his personal practices and (2) exclude Glevy as an expert witness or, alternatively, failing to exclude certain testimony that was based solely on her personal practices. However, because we have affirmed the judgment of the district court, we need not address these assigned errors. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *In re Interest of Steven V., ante* p. 256, 14 N.W.3d 18 (2024).

### 3. BATTER DEFENDANTS' CROSS-APPEAL

The Batter defendants have also filed a cross-appeal, assigning, restated, that the district court erred in (1) receiving Magee's affidavit in opposition to Batter's pretrial motion to strike despite Batter's objections, and (2) admitting Magee's testimony at trial. We have affirmed the judgment of the district court and need not address these assigned errors as they are not necessary to adjudicate the case and controversy before us. See *id*.

### VI. CONCLUSION

Having found no reversible error in any of the jury instructions refused or given, we affirm the judgment of the district court. As resolution of the issues raised in the appellees' cross-appeals are not necessary to adjudicate the case and controversy before us, we decline to address them.

AFFIRMED.